David GABAI, Plaintiff,

v.

M.B. JACOBY, Raymond Sanford, "John" Kennedy, C. Artuz, Defendants.

No. 91 Civ. 2605(SWK).

United States District Court, S.D. New York.

Aug. 6, 1992.

David Gabai, pro se.

Nancy Miller Lerner, Asst. Atty. Gen., State of N.Y., Dept. of Law, New York City, for defendants.

## ORDER ACCEPTING MAGISTRATE'S REPORT AND RECOMMENDATION

KRAM, District Judge.

This Court has received and reviewed the Report and Recommendation issued by Magistrate Judge Grubin dated August 6, 1992 in the above-captioned action. No timely objections to the Report and Recommendation have been made by the parties to this action. *See* Fed.R.Civ.P. 72(b). The Court has considered the Report and agrees with its recommendation to grant defendants' motion for summary judgment. Accordingly, it is hereby

ORDERED that the Report and Recommendation issued by Magistrate Judge Grubin dated August 6, 1992 is accepted in accordance with 28 U.S.C. § 636(b); and it is further

ORDERED that defendants' motion for summary judgment is granted.

## REPORT AND RECOMMENDATION

GRUBIN, United States Magistrate Judge:

On April 16, 1991, plaintiff, an inmate at the Green Haven Correctional Facility proceeding *pro se* and *in forma pauperis*, commenced this action pursuant to 42 U.S.C. § 1983 against the above-captioned four Green Haven officials. On October 21, 1991, defendants Matthew Jacoby and Christopher Artuz moved for dismissal of the complaint or, in the alternative, for summary judgment. The other two defendants have never been served with a summons and complaint. On October 29, 1991, I advised plaintiff of the importance of responding to the motion and the consequences of a failure to rebut material evidence on a summary judgment motion. On February 20, 1992, plaintiff submitted a response consisting of a letter with various

enclosures, and on March 13, 1992 defendants replied. For the following reasons, I respectfully recommend that the motion for summary judgment be granted.

## BACKGROUND

For the purposes of this motion, I have construed all facts and drawn all inferences in favor of plaintiff. According to his complaint, on September 25, 1990, at approximately 9:30 a.m., after an appointment with an optometrist at the Green Haven clinic, plaintiff asked defendant Jacoby, a correction officer assigned to the clinic, for a pass to return to his housing unit. Plaintiff alleges that he told Jacoby "he was a patient in the unit for the physically disabled ("UPD"), and that he needed to return to the block to get his medication." Jacoby told him "to step aside, and, when he tried to further explain his need to return to the block, he was forcibly placed into an adjoining room." Complaint ¶ IV. According to the complaint, "[d]uring the incident plaintiff suffered cardiac distress and difficulty breathing," and Jacoby called Nurse A.M. Kennedy to the scene. Kennedy examined plaintiff, but "rendered no medical care," informing Jacoby that plaintiff was "fine." After plaintiff returned to the UPD, he was taken to a nurse's station, where a different nurse administered oxygen and called for a physician who "tended to plaintiff for some time." *Id.* Plaintiff further alleges:

> Later evaluation by a cardiologist revealed that plaintiff's condition had deteriorated after the incident. A medical evaluation on the following day revealed a bruise on plaintiff's arm, caused by a chair shoved at plaintiff by Jacoby after plaintiff was placed in the waiting area.

*Id.*

On the day of the incident, Jacoby filed an inmate misbehavior report against plaintiff charging him with violent conduct, creating a disturbance, interference with an employee, refusing a direct order, threats, and a "movement regulation violation."[1]

---

1. A copy of the inmate misbehavior report is attached as Exhibit F to the Affidavit of M.B. Jacoby, sworn to October 19, 1991 ("Jacoby Aff.").

Jacoby described the incident in the report as follows:

I explained the procedure of one way passes and instructed Gabai to go to the bullpen. Gabai immediately became loud and hostile stating that every time he comes down, I did this to him. Referring to making him wait for an escort. I ordered Gabai several times to return to the bullpen; he refused demanding to see a sergeant. I instructed Gabai to go to the bullpen and I would then get him a sergeant. Gabai refused, getting verbally loud and hostile, stating I was causing him to have a heart attack. Gabai was thrusting his arms out towards me, pointing his finger in my face and chest and creating a disturbance with his loud and boisterous manner. I ordered Gabai to keep his hands below waist level and to stop pointing his finger in my face or I would take appropriate action. Officers T. Pisco and R. Blay assisted myself in getting Gabai into the A-1 waiting room. Sgt. Beverly was notified and responded to the area to assist with the situation.... [He] attempted to speak with Gabai, but was unsuccessful d[ue] to Gabai's uncooperative behavior. Gabai also stated that, "he made sure he had my name and that I would be "taken care" of." Because Gabai stated he was having heart trouble due to the situation I caused, LPN Kennedy attempted to examine Gabai, but Gabai stated, "he was okay." Gabai was returned to his cell and confined. See attached To-From written by LPN Kennedy.

*Id.* Ex. F. On September 30 and October 4, 1990, a Tier II disciplinary hearing was held before Lieutenant Raymond Sanford. Sanford denied plaintiff's request for a Hebrew interpreter at the hearing. Complaint ¶ IV. Plaintiff, Jacoby and Sergeant Beverly testified. On October 4, 1990, plaintiff was found guilty[2] and sentenced to 10 days keeplock, which he had already served, and 30 days loss of privileges. *Id.; see* Jacoby Aff. ¶ 10-11. On the "Hearing Disposition Rendered Form," Sanford stated that Jacoby's written report and the testimony of the two officers were the "evidence relied upon," and he gave the following as his "reasons for disposition":

This is to impress on this inmate and all inmates. This type of conduct will not be tolerated at any time or place. Inmates will not display this type of conduct, towards staff, they will follow all orders, and will not create a disturbance.

Ex. H to Jacoby Aff. That same day, plaintiff appealed. On his appeal form, he requested an opportunity to review the hearing tape and to supplement his appeal after doing so. He did not receive the tape, however, until after his appeal had been decided against him. On October 15, 1990, defendant Artuz, First Deputy Superintendent at Green Haven, affirmed the disposition, finding that "the hearing was held in accordance with the rules and regulations" and there was "sufficient evidence to affirm the charge(s)." Ex. I to Jacoby Aff.

In his complaint, plaintiff describes his injuries as follows: "Bruise to arm. Exacerbation of heart condition. Surgery was recommended before, but now is imperative." Complaint ¶ IV. He seeks as relief: (1) an order barring Jacoby and Kennedy from any DOCS position involving contact with inmates; (2) reversal and expunction of the results of the hearing; (3) $10,000 in compensatory damages; and (4) $100,000 in punitive damages.

Defendants have submitted in support of their motion affidavits from (1) Jacoby; (2) Mary Indiculla, R.N., who examined plaintiff on September 25, 1990, the day of the incident, and on September 27, 1990; (3) Dr. Darly Jeanty, the Medical Director at Green Haven, who examined plaintiff on September 25 and 28, 1990; and (4) Deo Read, plaintiff's Correctional Counselor at Green Haven.

Jacoby's affidavit essentially repeats the account in his inmate misbehavior report. *See* Jacoby Aff. ¶¶ 2-9. Regarding plain-

---

**2.** The materials presented by the parties do not make clear of which of the six charges plaintiff was found guilty.

tiff's request for a pass, Jacoby adds that he did not issue one because UPD patients were not exempt from the procedure of waiting in the "bullpen" area for a "go-back" to their units. *Id.* ¶ 2. Jacoby also states, "At no time did I strike the inmate or hit him with a chair or anything else; nor did I notice any physical mark on inmate Gabai." *Id.* ¶ 7.

Indiculla, the nurse who examined plaintiff when he returned to the UPD, states, based on her contemporaneous notes, that plaintiff referred to a "rough time" with an unnamed correction officer but did not say anything about a bruise caused by a chair. "His complaint was limited to difficulty breathing and oxygen was administered." Affidavit of Mary Indiculla, R.N., sworn to October 16, 1991 ("Indiculla Aff."), ¶¶ 4, 12. Dr. Jeanty likewise states, based on contemporaneous notes, that plaintiff told him he had an altercation with a correction officer but "did not in any way indicate that he had received any physical injury or bruise from the incident, nor did I observe any. His only complaint related to shortness of breath which was promptly treated." Affidavit of Darly Jeanty, M.D., sworn to October 16, 1991 ("Jeanty Aff."), ¶¶ 7, 13; Ex. B to Indiculla Aff. Notes made by another nurse who treated plaintiff the following day state that he "[c]omplained of a painful area on his [left f]orearm" that was "slightly swollen with a noticeable bruise" that he claimed was "the result of the altercation.... He claims he was hit by a chair." On September 27, plaintiff made a similar remark to Indiculla, and she noted a "black & blue mark [the] size of a [dime] on the left posterior part of the for[e]arm" and no swelling. Indiculla states, "These notes indicate that I saw a small, superficial bruise. In my judgment, it was not a serious injury and did not require any immediate action." Indiculla Aff. ¶¶ 6–8 and Ex. B thereto. Further notes state that plaintiff claimed he was being "picked on" by some of the officers and talked of "several pains possibly caused by the altercation with the officer." On September 28, Jeanty's notes state that plaintiff com-

plained that one of the correction officers "pushed a chair at him when he went to the treating room. The chair struck him to the left forearm and a small 1 cm contusion resulted." Jeanty concludes from the notes that the bruise was not a serious injury: there was no swelling, no laceration, full range of motion, and no fracture or loss of function. "No treatment was indicated or ordered." Jeanty Aff. ¶¶ 8–9 and Ex. B to Indiculla Aff.

Jeanty also describes plaintiff's long history of heart disease and abuse of drugs and alcohol which caused cirrhosis of his liver and other medical problems and the "extensive and appropriate treatment" he had received "throughout his incarceration."[3] Jeanty states that, as part of plaintiff's "continuing treatment for his heart condition," he was treated by a heart surgeon at the Albany Medical Center on October 5, 1990 (ten days after the incident at issue herein) who recommended that he undergo surgery for an aortic valve replacement and mitral valvuloplasty. Plaintiff underwent such surgery on December 5, 1990. Such surgery "was made necessary by years of a deteriorating heart condition" and "had been under consideration for months." It "was not emergency in nature and was, in no way, an outgrowth of the altercation with the correction officer." Jeanty Aff. ¶¶ 10–12.

All four affidavits in support of defendants' motion address the subject of plaintiff's facility in English. Jacoby states that plaintiff "spoke with me in fluent English." Jacoby Aff. ¶ 13. Indiculla and Jeanty each state that plaintiff communicated with the Green Haven staff in English and "has never indicated that he does not understand spoken English." Indiculla Aff. ¶ 14; Jeanty Aff. ¶ 15. Read states that plaintiff has been in the United States for 30 years; he is "literate, competent and knowledgeable in English skills"; and "[h]is English comprehension is excellent, he has a full vocabulary, and he speaks comfortably in English with everyone."

---

**3.** Defendants have submitted a copy of plaintiff's complete medical file in addition to the particular documents annexed to their affidavits.

Affidavit of Deo Read, sworn to October 17, 1991, ¶ 4.

In his letter of February 20, 1992 submitted in response to defendants' motion, plaintiff refers to a "pattern of wrong doing by defendants" allegedly shown by documents enclosed with the letter (treatment notes already submitted with defendants' motion) and copies of four unsworn documents addressed by other inmates to various prison officials. The four documents are: a letter from another inmate to the DOCS Commissioner alleging harassment of Jewish inmates by Jacoby and two other correction officers; a petition signed by several inmates to Dr. Jeanty asking that Nurse Kennedy be removed; a memorandum to the Superintendent from one of the signatories to that petition complaining about Kennedy and several correction officers; and a request for disciplinary action against Jacoby from another inmate.[4]

## DISCUSSION

*Summary Judgment Standards*

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which can be done merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). The nonmoving party then must meet a burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed. R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552.

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion," *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir.1988); *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), and extend extra consideration to a *pro se* plaintiff who is to be given "special latitude on summary judgment motions," *McDonald v. Doe*, 650 F.Supp. 858, 861 (S.D.N.Y.1986). *See also Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir.1986). But the court is to inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), and to grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative, *id.* at 249–50, 106 S.Ct. at 2510–11; *Knight v. U.S. Fire Insurance Co.*, 804 F.2d at 12, 15; *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). To determine whether the nonmoving party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the nonmovant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over irrelevant or unnecessary facts will not preclude summary judgment, *id.*, but the presence of unresolved factual

---

**4.** Plaintiff's letter to the court—like all his various other correspondence and submissions—is written in fully comprehensible English and shows a fluency and literacy far greater than the usual inmate correspondence to this court.

issues that are material to the outcome of the litigation mandates a denial of the summary judgment motion. *See, e.g., Knight v. U.S. Fire Insurance Co.*, 804 F.2d at 11–12. In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)); *see also Weg v. Macchiarola*, 654 F.Supp. 1189, 1191–92 (S.D.N.Y.1989).

### Plaintiff's Claims

The gravamen of plaintiff's complaint is not clear. In order to state a claim in federal court under 42 U.S.C. § 1983, a federal constitutional or statutory provision must be implicated. The only reference in plaintiff's complaint to any federal constitutional or statutory provision is in its pre-printed title: "Form To Be Used by Prisoners in Filing a Complaint Under the Civil Rights Act, 42 U.S.C. § 1983." In essence, the claim appears to be that plaintiff was caused such emotional distress by the events of September 25, 1990 and his subsequent keeplock and disciplinary proceedings that it caused a worsening of his cardiac condition and forced him into surgery. Mindful of our duty, however, to construe *pro se* actions liberally, *see Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam); *Salahuddin v. Coughlin*, 781 F.2d 24, 28–29 (2d Cir.1986), we have analyzed the case under all possible constitutional theories that it may be seen possibly to invoke and find it may be read to imply three constitutional claims: (1) defendant Jacoby used excessive force and was otherwise deliberately indifferent to plaintiff's medical needs in violation of the Eighth Amendment; (2) Nurse Kennedy was deliberately

indifferent to plaintiff's medical needs in violation of the Eighth Amendment; and (3) Lt. Sanford and defendant Artuz, through their involvement in plaintiff's hearing, denied him due process of law in violation of the Fourteenth Amendment.[5]

### The claim against Jacoby

In order to sustain a constitutional claim with respect to prison officials' use of force or causation of medical harm, the behavior of the officials must have been such that it rose to the level of a violation of the cruel and unusual punishments clause of the Eighth Amendment. The Eighth Amendment is violated only when such behavior by officials involves the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986); *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)); *see Hudson v. McMillian*, —— U.S. ——, ——, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992); *Ingraham v. Wright*, 430 U.S. 651, 664–69, 97 S.Ct. 1401, 1408–12, 51 L.Ed.2d 711 (1977). "What is necessary to establish an 'unnecessary and wanton infliction of pain' ... varies according to the nature of the alleged constitutional violation." *Hudson v. McMillian*, —— U.S. at ——, 112 S.Ct. at 998 (citing *Whitley v. Albers*, 475 U.S. at 320, 106 S.Ct. at 1084). "[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'" *Hudson v. McMillian*, —— U.S. at ——, 112 S.Ct. at 998 (citing *Estelle v. Gamble*, 429 U.S. at 104, 97 S.Ct. at 291). By contrast, "whenever prison officials stand accused of using excessive physical force," *i.e.*, whether they are confronted with a prison disturbance or otherwise use force to keep order, "the core judicial inquiry is that set forth in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

---

**5.** Because Kennedy has never been served with the summons and complaint, the second claim, even if pleaded, is not before us. Likewise, because Sanford was not served, the third claim is before us only with respect to Artuz.

cause harm." *Hudson v. McMillian,* — U.S. at —, 112 S.Ct. at 999; *see id.* at —, 112 S.Ct. at 998; *Whitley v. Albers,* 475 U.S. at 320–21, 106 S.Ct. at 1084–85 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

Jacoby disputes plaintiff's allegation that he pushed him into a chair, causing a bruise on his arm, but even when we accept plaintiff's account as true for the purpose of this motion, it is insufficient to state a claim. The undisputed evidence shows that the bruise was not a serious injury, and, while the use of excessive force against a prisoner may violate the Eighth Amendment even where no serious injury is suffered, *see Hudson v. McMillian,* — U.S. at —, 112 S.Ct. at 997, plaintiff does not allege any facts to indicate that Jacoby applied force "maliciously and sadistically to cause harm," and not "in a good-faith effort to maintain or restore discipline." *Id.* at —, 112 S.Ct. at 999. As the late Judge Friendly stated in *Johnson v. Glick:*

> Certainly the constitutional protection is nowhere nearly so extensive as that afforded by the common law tort action for battery, which makes actionable any intentional and unpermitted contact with the plaintiff's person or anything attached to it and practically identified with it; still less is it as extensive as that afforded by the common law tort action for assault, redressing "[a]ny act of such a nature as to excite an apprehension of battery".... Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.

481 F.2d at 1033 (citations omitted).[6] Plaintiff merely alleges that a chair was shoved at him; he does not allege any facts to indicate Jacoby's state of mind at the time of the alleged shove or indicate that the shove into him was purposeful, rather than inadvertent, and does not even allege that it was. In his own account, there is no basis for concluding that it was a "malicious[ ] and sadistic[ ] use [of] force to cause harm," *Hudson v. McMillian,* — U.S. at —, 112 S.Ct. at 1000, or that it "evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur," *id.* at —, 112 S.Ct. at 999 (quoting *Whitley v. Albers,* 475 U.S. at 321, 106 S.Ct. at —). It therefore does not reflect a "sufficiently culpable state of mind" to support an Eighth Amendment claim. *Hudson v. McMillian,* — U.S. at —, 112 S.Ct. at 999 (quoting *Wilson v. Seiter,* 501 U.S. —, —, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991)). *See also Candelaria v. Coughlin,* 787 F.Supp. 368, 374–75 (S.D.N.Y.1992) (under *Hudson v. McMillian,* Eighth Amendment claim dismissed where plaintiff alleged correction officer "pushed his fist against my neck so that I couldn't move and I was losing my breath because of the pressure" but did not allege "any repeated or continuous grabbing of the throat, or any choking" or "any resulting physical injury").

To the extent plaintiff seeks to allege that Jacoby's behavior evidenced deliberate indifference to his medical needs in that Jacoby prevented him from returning immediately to his cell and caused him stress that affected his heart condition, his claim must also fail. Jacoby has explained in his affidavit, which repeats the account set forth in his misbehavior report, that, as plaintiff knew from prior visits to the clinic, all inmates are required to wait in the "bullpen" for a "goback" to their cells. Plaintiff, nevertheless, refused to go to the bullpen, creating a disturbance and requiring two additional correction officers to take him into the waiting room. Jacoby states that at no time did he strike plaintiff or hit him with a chair or anything else. In his letter responding to defendants' motion, plaintiff has submitted no evidence (or even allegations) to rebut Jacoby's statements, despite his being advised by this court and by the defendants' motion papers that un-

---

**6.** That the analysis in *Johnson v. Glick* is still to be used in the Eighth Amendment context was confirmed in *Graham v. Connor,* 490 U.S. 386, 398 n. 11, 109 S.Ct. 1865, 1872 n. 11, 104 L.Ed.2d 443 (1989); *see also Hudson v. McMillian,* — U.S. at — – —, 112 S.Ct. at 998–1000; *Anderson v. Sullivan,* 702 F.Supp. 424, 426 n. 2 (S.D.N.Y.1988).

rebutted statements of fact of the defendants could mean dismissal of his case on this motion. Jacoby's sworn statements indicate nothing more than his attempt to have plaintiff follow regular prison procedure. (Plaintiff has never indicated why he should not have been expected to do so.) Plaintiff has not shown that Jacoby's acts were done with the intent to cause physical harm to plaintiff. According to Jacoby, when it became known to him plaintiff might be suffering chest pain and shortness of breath, he immediately called Nurse Kennedy. This behavior hardly evidences a deliberate indifference to plaintiff's medical needs. With respect to plaintiff's claim that Jacoby's behavior exacerbated his heart condition and forced him to have surgery, even if there were evidence of intent on Jacoby's part, plaintiff has submitted no evidence to rebut the sworn statements from two medical professionals who treated plaintiff at the relevant time that his aortic valve replacement surgery was made necessary by years of a deteriorating heart condition, and that the September 25, 1990 incident had nothing to do with his need for surgery. In view of plaintiff's failure to rebut the evidence presented by defendants by coming forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), "there is simply no adequate basis for allowing this action to continue against" Jacoby. *Weg v. Macchiarola*, 654 F.Supp. at 1194.

*The claim against Artuz*

Defendants argue that the complaint fails to state a claim against defendant Artuz because it contains no allegations demonstrating his personal involvement in the incidents of which plaintiff complains, and the doctrine of *respondeat superior* is not available in § 1983 actions. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 692–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978). However, liberally construed, plaintiff's complaint can be read to state a claim that, after learning of Sanford's denial of plaintiff's right to due process of law at the hearing through plaintiff's appeal, Artuz failed to remedy the wrong by overturning the hearing officer's decision. *See, e.g., Smith v. Tucker*,

No. 88 Civ. 2798 (VLB) (MHD), 1991 WL 211209 at *7–8, 1991 U.S. Dist. Lexis 14334 at *22–24 (S.D.N.Y. Oct. 4, 1991); *Howard v. Wilkerson*, 768 F.Supp. 1002, 1005, 1009 n. 12 (S.D.N.Y.1991).

▮ Plaintiff's only complaint herein concerning his hearing is that he was denied an interpreter. But he has not rebutted the sworn statements by defendants' affiants that he understands spoken and written English and is able to function in English. He does not set forth how, if at all, he was prejudiced by the denial of an interpreter. Thus, the failure to provide plaintiff with a Hebrew interpreter at his hearing in no way violated his rights under the Due Process Clause. *Compare Powell v. Ward*, 487 F.Supp. 917, 932 (S.D.N.Y. 1980), *modified on other grounds*, 643 F.2d 924 (2d Cir.), *cert. denied*, 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981) (translator should be present at hearings for Spanish speaking inmates "who cannot read and understand English"). With respect to his appeal, he complains that he did not receive a copy of the tape of his hearing until after his appeal was decided. However, even if we assume plaintiff had a right to the tape, again, he has indicated no way in which he was prejudiced on his appeal by the failure to have received the tape earlier. He does not indicate what, if anything, he would have done differently if he had had the tape or anything the tape reveals that would have affected his appeal. Under these circumstances, there is no issue of fact raised for trial.

## CONCLUSION

For the above reasons, I respectfully recommend that your Honor grant defendants' motion for summary judgment.

Copies of the foregoing report and recommendation have been mailed this date to:

Mr. David Gabai

# 88–A–2960

Green Haven Correctional Facility

Drawer B

Stormville, New York 12582

Nancy Miller Lerner, Esq.

Assistant Attorney General

120 Broadway
New York, New York 10271

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court and send copies to the Honorable Shirley Wohl Kram, to the opposing party and to the undersigned. Failure to file objections within ten (10) days will preclude later appellate review of any order that will be entered by Judge Kram. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.1992); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir.1989) (per curiam); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir.1983) (per curiam). *See generally* Fed.R.Civ.P. 6(a), 6(e).

Dated: New York, New York

August 6, 1992