Donald **JERMOSEN**, Plaintiff,

v.

Thomas **COUGHLIN, et al.,** Defendants.

No. 88 Civ. 9197 (RJW).

United States District Court,
S.D. New York.

March 2, 1995.

Donald Jermosen, plaintiff pro se.

Atty. Gen. of State of N.Y., Dennis Vacco, Atty. Gen., Christopher Coffey, Legal Intern (Lisa R. Dell, of counsel), New York City, for defendants Except Curry.

ROBERT J. WARD, District Judge.

Plaintiff *pro se* Donald R. Jermosen ("Jermosen") has moved for summary judgment pursuant to Rule 56(b), Fed.R.Civ.P., claiming that no genuine dispute exists as to any material fact in his 42 U.S.C. § 1983 civil rights action brought against several employees of the Correspondence Clerks' Office (the "correspondence clerks") at the Sing Sing Correctional Facility ("Sing Sing") and various officials of the New York State Department of Correctional Services (collectively, "the defendants"). Plaintiff has further moved pursuant to Rule 37(b)(2), Fed. R.Civ.P. for sanctions against three of the

defendants, Thomas A. Coughlin, Edward V. Tucker, and T. Hockler for their failure to comply with plaintiff's pre-trial discovery demands.[1] In response, the defendants have moved pursuant to Rule 56(b), Fed.R.Civ.P., for an order granting summary judgment and dismissing Jermosen's complaint. For the reasons set forth below, defendants' motion is granted and plaintiff's motions are denied as moot.

## BACKGROUND

From May 1986 to November 1986, Jermosen, who is currently incarcerated at Attica Correctional Facility, was a prisoner housed at Sing Sing. Plaintiff alleges that during that six month period, defendants improperly tampered with his privileged correspondence and in so doing, violated his constitutional rights under the First, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. To vindicate those rights, Jermosen, initiated a civil rights action under 42 U.S.C. § 1983 on December 29, 1988.

Specifically, Jermosen contends that the defendants interfered with three types of privileged communications. First, he claims that three letters sent to him by Thomas Coughlin, the former Commissioner of the New York State Department of Correctional Services, ("DOCS") were opened and read by the defendants before being delivered to Jermosen. Plaintiff argues that this interference with his mail from the Commissioner was in violation of Directive 4421, "Privileged correspondence dated May 8, 1986." Defendants refute these accusations and claim to have no specific knowledge of Coughlin's letters to Jermosen being opened prior to delivery. They assert that plaintiff's privileged mail was handled in accordance with departmental directives, including Directive 4421.

Secondly, Jermosen professes that his incoming legal mail was tampered with on three separate occasions. Plaintiff claims that a package containing a law book that was sent to him by United States District Judge John T. Elfvin was opened by the defendants out of his presence and that the book was then subsequently brought to his cell by prison guards. Jermosen also argues that a letter sent to him by an Assistant Attorney General was opened out of his presence by the correspondence department and then sent to him with a note apologizing for the mistake. Finally, Jermosen asserts that when Ruth N. Cassell, an attorney with Prisoner's Legal Services of New York, sent him a tape of his disciplinary proceeding, the package was improperly opened by defendants and the tape was never delivered to him. The empty envelope was then returned to Ms. Cassell. In their answers to Jermosen's interrogatories, all of the defendants assert that they have no knowledge of any of these alleged incidents.

The last type of tampering Jermosen claims to have suffered was deliberate interference with his outgoing legal mail. Plaintiff alleges that he sent a letter to the Attorney General's Office in Buffalo on June 2, 1986. According to Jermosen, that letter was never sent by the correspondence clerks who later returned the opened letter to him on June 9, 1986. He also claims that other unidentified correspondence which was sent on unspecified dates was not delivered to the attorneys in the Buffalo Office. As with all of Jermosen's previous allegations, defendants claim to have no personal knowledge of these incidents.

It is based on these allegations that plaintiff now moves for summary judgment, arguing that there can be no dispute that these incidents happened and that they violated his civil rights in contravention of 42 U.S.C. § 1983. Defendants likewise move for summary judgment based on these facts, asserting that any opening of plaintiff's mail was merely a negligent act and does not rise to the level of a constitutional violation. They further argue that Jermosen offers insufficient evidence to support his claims and, as a result, they are entitled to a judgment as a matter of law.

---

1. All three defendants have since filed verified responses to plaintiff's interrogatories. As a result, plaintiffs Rule 37(b)(2) motion is moot.

## DISCUSSION

### I. *Standards for Granting Summary Judgment*

In examining a motion for summary judgment, a court must determine whether the moving party has established "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The initial burden of establishing that no such dispute exists is borne by the party seeking summary judgment. *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986). However, while all ambiguities and inferences that can be drawn from the underlying facts must be viewed in favor of the nonmoving party, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991), a moving party may establish that no dispute exists merely by "setting forth specific facts denying [plaintiff's] claims." *Williams v. Smith,* 781 F.2d at 323.

Once he has done so, the burden then shifts to the nonmoving party, who must then present concrete evidence tending to show that he can support his claims against the moving party. If, after scrutinizing the pleadings, depositions, answers to interrogatories, and affidavits, a court determines that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" at trial, summary judgment must be entered in favor of the moving party. *Celotex Corp. v. Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

Thus, a nonmoving party cannot survive a motion for summary judgment merely by relying on the allegations contained in his pleadings. *Corselli v. Coughlin,* 842 F.2d 23, 25 (2d Cir.1988). Rather, to defeat a motion for summary judgment, the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts … the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted). *See also, Gibson v. American Broadcasting Companies,* 892 F.2d 1128, 1132 (2d Cir.1989). It follows then, that a moving party can win a motion for summary judgment "by pointing out that there is an absence of evidence to support the non-moving party's case." *Gabai v. Jacoby,* 800 F.Supp. 1149, 1153 (S.D.N.Y.1992).

■ Although *pro se* plaintiffs are entitled to "special latitude," when defending against summary judgment motions, *McDonald v. Doe,* 650 F.Supp. 858, 861 (S.D.N.Y.1986), absent a showing of "concrete evidence from which a reasonable juror could return a verdict in [the non-moving party's] favor," summary judgment must be granted to the moving party. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Evidence which is merely "colorable, conclusory, speculative or not significantly probative" is insufficient to withstand a summary judgment motion. *Gabai v. Jacoby,* 800 F.Supp. at 1153.

### II. *Jermosen's Civil Rights Claims*

Prior to discussing the material elements that Jermosen must prove in order to maintain his claim under 42 U.S.C. § 1983—and hence survive summary judgment—the Court must first determine exactly which constitutional deprivations Jermosen alleges to have suffered at the hands of the defendants. In his accompanying memorandum of law, Jermosen vaguely argues that his First, Fifth, Sixth, and Fourteenth Amendment rights were violated when the defendants tampered with his privileged and legal mail. The Supreme Court faced allegations similar to Jermosen's in *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974), one of the cases Jermosen relies upon to establish that his constitutional rights were violated.

As is the case with Jermosen, the plaintiff in *Wolff* alleged that his First, Sixth and Fourteenth Amendment rights were infringed by Nebraska's prison policy which allowed prison authorities to open legal mail in the presence of the inmate to whom it was sent. Before ruling on the constitutionality of the

challenged policy, the Court first questioned whether any constitutional rights were even implicated by the prison's practice of opening inmates' mail. First, the Court stated that, while First Amendment rights of prisoners may protect against censorship of inmate mail (citing *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974)), there existed no corresponding First Amendment right to be free from inspection or perusal.

The Court then dismissed the Sixth Amendment argument because the plaintiff had ignored the fact that the amendment's reach only extended to attorney-client relationships in a criminal setting, while plaintiff's claim would have insulated all legal mail sent to prisoners from inspection, whether related to a criminal or civil matter, or even if it were merely personal communications. Finally, the Court examined plaintiff's Fourteenth Amendment due process claim based on the right of access to the courts. The Supreme Court noted that prisoners are only entitled to reasonable access to the courts, not completely unfettered communication. Nonetheless, while questioning the applicability of the right to access to the courts in this situation, the Court stated that it need not decide whether any of these rights were relevant, since it had determined that, even assuming that some constitutional right was implicated, those rights were in no way infringed by the prison policy.

■ Like the Supreme Court in *Wolff*, this Court has serious doubts as to whether the defendants' alleged behavior in the instant case even implicates any of his constitutional rights.[2] *See Pickett v. Schaefer*, 503 F.Supp. 27, 28 (S.D.N.Y.1980) ("without explicit proof of damages, an inadvertent violation of a prisoner's mail rights does not state a claim cognizable under 42 U.S.C. § 1983"). However, even assuming that one or more of plaintiff's constitutional rights could be infringed by the alleged actions of the defendants, Jermosen has still failed to make out a colorable claim under 42 U.S.C. § 1983 and his action must be dismissed.

*A: Personal Involvement of Defendants*

■ Section 1983 provides, *inter alia*, that any person who, under color of state law, deprives or causes another to deprive a person of his rights secured by the Constitution and federal statutes, shall be held liable to the injured party. Civil Rights Act of 1871, 42 U.S.C. § 1983. The "personal involvement of defendants in alleged constitutional deprivation is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977). *See also Rizzo v. Goode*, 423 U.S. 362, 371–73, 96 S.Ct. 598, 604–05, 46 L.Ed.2d 561 (1976). A plaintiff must allege that defendants "were directly and personally responsible for the purported unlawful conduct...." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883 (2d Cir. 1987), and establish fault and causation on the part of each defendant.

■ In the instant motion, Jermosen has "failed adequately to address defendants' claim that they did not personally know, acquiesce or participate in any deprivation of plaintiff's constitutional rights." *Williams v. Smith*, 781 F.2d at 323. With the exception of a few envelopes which he claims were opened when delivered to him, plaintiff has not presented the Court with any concrete evidence demonstrating that the defendants he is presently suing were directly involved in the alleged mail tampering.[3]

---

2. In addition to his First, Sixth, and Fourteenth Amendment claims, which the Court assumes are premised on the theories enumerated by the Supreme Court in *Wolff*, plaintiff also states that his Fifth Amendment rights were somehow infringed by defendants' actions (Complaint ¶ 2). However, other than this blanket accusation, plaintiff makes no effort to explain what actions undertaken by the defendants infringed his right against compelled self-incrimination, and the Court is unaware how the two could possibly be related. At any rate, his remedy for such a violation would be the suppression of any evidence gathered in violation of his Fifth Amendment rights, not damages under Section 1983. If plaintiff is instead claiming that his due process rights under the Fifth Amendment were violated, his claim is merely repetitive of his more properly stated Fourteenth Amendment claim. Accordingly, this aspect of plaintiff's claim is summarily rejected by this Court.

3. The Court agrees with defendants that the exhibits submitted by Jermosen in support of § 1983 action do little to prove his claims. Exhibits 1 through 3 are envelopes addressed to

In fact, Jermosen has failed to demonstrate that any of the correspondence clerks, with the possible exception of Raymond McCauley ("McCauley"), even came into contact with his mail. McCauley was the correspondence clerk assigned to handle the mail of prisoners whose last name begins with the letter "J". In the face of defendants' verified answers to plaintiff's interrogatories, which disclaim any personal knowledge of the alleged incidents, the mere possibility that the correspondence clerks may have had occasion to process Jermosen's outgoing mail is insufficient to establish any personal involvement in the alleged § 1983 constitutional deprivation. Furthermore, during the period of time Jermosen alleges that his mail was tampered with, defendant Margret Henry was an inmate records coordinator, and consequently had no contact with *any* prisoner's mail.

■ Nor has Jermosen demonstrated that any of the supervisory officials he named in his complaint—former Commissioner Coughlin, ("Coughlin") former Superintendent Sullivan ("Sullivan") and First Deputy Superintendent Tucker ("Tucker")—had any knowledge of or personal involvement in any of the alleged incidents.[4] It is well established that these officials cannot be held liable for the behavior of their subordinates on the theory of *respondeat superior. See Monell v. New York City Dep't of Social Serv.*, 436 U.S. 658, 693–95, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.1987) ("absent some personal involvement by [the superintendent of a DOCS facility] in the allegedly unlawful conduct of his subordinates, he cannot be held liable under section 1983").

■ In this circuit, a supervisor may only be held liable under Section 1983 if 1) he was directly involved in the deprivation, 2) he participated in the creation of, or the acquiescence in a policy or custom allowing constitutional violations, 3) he failed to remedy a wrong after learning about it through an appeal or complaint, or 4) he was "grossly negligent" in the training or management of subordinates who caused the wrong. *Williams v. Smith*, 781 F.2d at 323–24. Coughlin, Sullivan, and Tucker uniformly stated in their verified responses to Jermosen's interrogatories that they had no knowledge of nor were they otherwise made aware of any of the purported incidents. Faced with these denials, plaintiff has not presented any evidence, whatsoever, demonstrating that these officials had any knowledge of the alleged incidents, even though it is his burden to do so. *See Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir.1989) *citing Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985) (*per curiam* ) ("plaintiff must demonstrate 'personal involvement' of state commissioner of corrections and superintendent of prison, not mere 'linkage in the prison chain of command' "); *Holmes v. Fell*, 856 F.Supp. 181, 184 (S.D.N.Y.1994) (summary judgment granted in favor of supervisory nurse where no evidence of administrator's personal involvement).

Furthermore, since Jermosen is claiming that his mail was tampered with in violation

---

Jermosen with DOCS identified as the sender. On the back of each envelope, Jermosen has written that they were delivered to him in an opened condition. However, with the exception of plaintiff's unsupported conclusory allegation, these envelopes do not provide any significant probative evidence indicating that they were indeed opened by, or otherwise improperly handled by, the correspondence clerks. *See Herrera v. Scully*, 815 F.Supp. 713, 727 (S.D.N.Y.1993) (summary judgment appropriate where *pro se* inmate had alleged that his mail was improperly opened but failed to produce "the requisite 'significant probative evidence tending to support' his position in the face of defendants sworn affidavits").

Exhibits four and five, the former a letter sent by Jermosen to Patrick McCormack at the New York State Department of Law ("NYS Law Dept."), and the latter a letter sent by Jane Levine at the NYS Law Dept. to Jermosen, each contain a handwritten notation stating, "opened by mistake, sorry, correspondence dept." Even assuming that these messages were written by correspondence clerks at Sing Sing, they do little more than show that Jermosen's mail was at times, handled negligently. Exhibit Nine, which is a letter from Judge Elfvin's law clerk, proves nothing, other than the fact that the judge forwarded a law book to Jermosen which plaintiff has conceded he received.

4. In fact, it would make little sense for plaintiff to claim that Coughlin was directly involved or even knew about the alleged tampering with mail sent by himself.

of DOCS' own regulations, he cannot attempt to hold these supervisors liable under Section 1983 on the premise that they have established a policy or custom under which unconstitutional practices are commonplace. *McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir.1983). Even if all of the incidents alleged by Jermosen are assumed to have occurred, plaintiff has not alleged facts from which a trier of fact could find that these incidents were anything other than inadvertent negligent acts in contravention of established DOCS procedures.

As a result, summary judgment must be granted as to all the defendants who are not personally implicated by Jermosen's allegations of mail tampering. In other words, none of the defendants, with the exception of McCauley, can be held liable under 42 U.S.C. § 1983 because they were not personally responsible for handling the mail that Jermosen claims was interfered with, and have all declared in their answers to his interrogatories that they have no personal knowledge of these alleged incidents. Jermosen has advanced no concrete proof to refute the defendants' assertions. Accordingly, his Section 1983 action as applied to them must fail and summary judgment in favor of these defendants is granted.

McCauley has likewise stated that he has no personal knowledge of the incidents alleged in Jermosen's complaint, and Jermosen has failed to provide any concrete proof refuting McCauley's disavowal. Normally, this would be enough to grant summary judgment in favor of McCauley. A plaintiff cannot defeat a defendant's properly supported motion for summary judgment by "merely asserting that the jury might, and legally could, disbelieve the defendant's denial of [guilt]" *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. However, the Court is willing to give the benefit of the doubt to Jermosen and, in addition to assuming that his allegations are true, will accept the inference that, as the correspondence clerk responsible for handling the correspondence of inmates whose last name begins with the letter "J," McCauley knew or should have known about any interference with Jermosen's mail.

## B. *Deliberate Indifference*

■ In order to prevail on a 42 U.S.C. § 1983 claim alleging a violation of 14th Amendment due process rights, an inmate must prove that prison officials were deliberately indifferent to those rights. *See Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986). A showing of mere negligence is insufficient. "[T]he Due Process clause protects against an affirmative abuse of power; it is simply not implicated by a negligent act of an official causing loss of or injury to life, liberty, or property." *Daniels*, 474 U.S. at 328, 106 S.Ct. at 663.

■ As has been previously noted, plaintiff has failed to provide the Court with any evidence linking the defendants to the constitutional deprivations allegedly suffered. Even accepting Jermosen's version of events, they do little more than demonstrate that certain correspondence clerks, most probably McCauley, were negligent is handling his mail. The only relevant evidence presented is two envelopes that were reportedly signed by the correspondence department stating, "Opened by mistake. Sorry." Jermosen offers no evidence to suggest that these envelopes were not, in fact, opened by mistake, no evidence that defendants had a motive to be "deliberately or callously indifferent" to his mailing privileges, and no evidence that defendants had an established policy to open legal and privileged mail out of the presence of an inmate. To the contrary, all parties to this lawsuit agree that DOCS Directive 4421 forbids the opening of properly marked legal mail and all of the defendants have indicated that they handled prisoner's mail in accordance with that directive.

Viewing the evidence in a light most favorable to plaintiff, the most that the evidence can be construed as demonstrating is that, on certain isolated occasions, plaintiff's privileged mail was handled negligently by the Sing Sing correspondence clerks. As the Supreme Court has made abundantly clear, "the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials." *Davidson v. Cannon*, 474 U.S. at

348, 106 S.Ct. at 671. The plaintiff must show that the defendant acted with "deliberate or callous indifference" to plaintiff's constitutional rights. *Id.* at 347. Inasmuch as Jermosen has failed to demonstrate such deliberate indifference, summary judgment must be granted in favor of all the defendants, including McCauley.

### C. *Right to Access Claim*

 Under current Supreme Court precedent, an inmate has a constitutional right to reasonable access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977); *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974). However, "the Constitution requires no more than reasonable access to the courts." *Pickett v. Schaefer,* 503 F.Supp. 27, 28 (S.D.N.Y.1980).

To state a valid § 1983 claim that he has been denied reasonable access to the courts, Jermosen must show that the alleged deprivation actually interfered with his access to the courts or prejudiced an existing action. *See Hikel v. King,* 659 F.Supp. 337, 340 (E.D.N.Y.1987) (plaintiff failed to show how the destruction of documents could have impeded any suit that he had or could have brought). A delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation. *See Jones v. Smith,* 784 F.2d 149, 151–52 (2d Cir.1986) (access to courts not denied when inmate was prevented from working on legal case while confined to Attica's Special Housing Unit for violation of prison rules): *Richardson v. McDonnell,* 841 F.2d 120, 122 (5th Cir.1988) (unintentional delay in mailing inmate's legal mail was noted in time to permit inmate to re-prepare and timely file his writ application).

In his complaint, Jermosen claims that a tape of his disciplinary hearing, sent to him by an attorney at Prisoner's Legal Services of New York, was removed from inside its envelope by the correspondence clerks, thus depriving him from presenting certain unspecified information in a civil action. Putting aside the fact that plaintiff has presented no evidence that the correspondence clerks improperly handled or confiscated the tape,[5] Jermosen has failed to demonstrate that he was in any way prejudiced in pursuit of his legal action or that his access to the court was otherwise impaired. Indeed, plaintiff concedes that this civil action was settled. Furthermore, Jermosen's claim that he would have been able to achieve a better settlement had he had access to the tape is belied by the fact that plaintiff had ready access to the tape at Sing Sing and could have used it in the preparation of his civil action had he chosen to do so. Thus, as a matter of law, plaintiff has failed to establish prejudice, an essential element of his Fourteenth Amendment right to access to the court claim, and summary judgment must be granted in favor of the defendants. *Morgan v. Montanye,* 516 F.2d 1367, 1371 (2d Cir.), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976) (where no evidence demonstrating that inmate was prejudiced by opening of legal mail, dismissal of action affirmed); *Pickett v. Schaefer,* 503 F.Supp. 27, 28 (S.D.N.Y.1980) (where no prejudicial effect demonstrated reasonable access to court not been denied).

### CONCLUSION

For the foregoing reasons, defendants motion for summary judgment is granted and the action is dismissed. Plaintiff's motions are denied as moot.

It is so ordered.

---

5. Jermosen's sole piece of evidence in support of this claim is a letter from Ms. Cassell, the attorney who sent the tape to plaintiff, indicating that she received the envelope in which the tape was sent with a note on it stating that it was returned unclaimed. Ms. Cassell also notes that the envelope contained an indication that it was received at Sing Sing before being returned. However, nothing in this letter indicates that anyone, let alone the defendants, were personally involved in deliberately interfering with the mailing of the tape.