Ronald C. STRADLING and Betty Lou Stradling, Plaintiffs,

v.

The SOUTHLAND CORPORATION, Defendant.

No. 3:95–CV–353

United States District Court, M.D.Pennsylvania.

March 19, 1996.

Michael S. Greek, William G. Schwab, Lehighton, PA, for plaintiffs.

Arthur L. Pressman, Jeffrey Zucker, Abraham, Pressman & Bauer, P.C. Philadelphia, PA, for defendant.

## MEMORANDUM

VANASKIE, District Judge.

Plaintiffs Ronald C. Stradling and Betty Lou Stradling (the "Stradlings") bring this action against the Defendant, Southland Corporation, alleging a violation of the New Jersey Franchise Practices Act. Presently pending are cross-motions for summary judgment. The issues presented are whether the Act applies to the Franchise Agreement at issue, and, if so, whether a requirement in the Agreement that the Stradlings execute a general release in favor of Southland in connection with the transfer of Stradlings' 7–Eleven franchise to a location in New Jersey violates the New Jersey Act. Because the Franchise Agreement does not "contemplate" the operation of a franchise in New Jersey, the Act is inapplicable. More-

over, because the Release in question is intended to cover only those claims connected with the Pennsylvania franchise, which presently exist or may arise prior to the execution of the Release, the requirement that it be signed before a transfer will be effectuated does not violate the New Jersey Franchise Practices Act. The Stradlings' motion will, therefore, be denied, and summary judgment will be entered in favor of Southland.

## I. BACKGROUND

Southland is a franchisor of 7–Eleven convenience stores. On May 31, 1979, Southland and the Stradlings entered into a 7–Eleven Store Franchise Agreement (the "Allentown, PA Franchise Agreement") for the operation of a 7–Eleven convenience store in Allentown, Pennsylvania. (Dkt. Entry # 19 at Ex. "A.") The term of the Allentown, PA Franchise Agreement was the earlier of fifteen (15) years or until the end of Southland's leasehold rights in the property. On July 11, 1979, the parties entered into a "Year 2000 Amendment," which extended the term of the original Franchise Agreement and allowed the Franchisee, in the event of a termination or closing of an existing store, to transfer to another available 7–Eleven Store. (*Id.* at Ex. "B.")

On September 2, 1994, Southland, as sublessor of the Stradlings' 7–Eleven convenience store, notified the Stradlings that Southland did not intend to renew the lease for the Allentown location. Southland, however, also informed the Stradlings that they could transfer their franchise to another 7–Eleven store for which they were qualified. The Stradlings elected to transfer their franchise to a 7–Eleven store located in Toms River, New Jersey.

Paragraph 25 of the Allentown, PA Franchise Agreement provides, *inter alia,* that the Franchise Agreement shall not be transferred unless, as a condition precedent, Southland and the Stradlings execute a Mutual Termination and Release (the "Release")

of the Franchise Agreement. (*Id* at Ex. "A" at ¶ 25.) Southland presented a copy of the Release to the Stradlings for their execution.[1] (*Id.* at Ex. "D.") The Stradlings failed to execute the Release. As a result, Southland refused to allow the transfer unless the release was executed.

The Stradlings filed this action on March 13, 1995, claiming that Southland's actions have violated the New Jersey Franchise Practices Act. The Act makes it an unlawful practice to require a franchisee at the time of entering into a franchise agreement to consent to a release of claims arising under the Act. The Stradlings contend that by requiring them to sign the Release prior to transferring their store to Toms River, New Jersey, Southland has violated the Act. (Dkt. Entry # 1 at 3.)

On May 16, 1995, Southland filed a motion for summary judgment (Dkt. Entry # 6), along with a statement of undisputed material facts (Dkt. Entry # 5). Southland filed a brief in support its motion on June 2, 1995, (Dkt. Entry # 10), along with exhibits. (Dkt. Entry # 11.) On June 26, 1995, the Stradlings filed a cross-motion for summary judgment (Dkt. Entry # 19), a supporting brief (Dkt. Entry # 20), a statement of undisputed material facts (Dkt. Entry # 21), an affidavit in support of their motion (Dkt. Entry # 22), and a brief in opposition to Southland's motion for summary judgment. (Dkt. Entry # 23.) On July 11, 1995, Southland filed a brief in opposition to Stradlings' motion for summary judgment and a reply brief in support of its own motion. (Dkt. Entry # 28.)

## II. DISCUSSION

■ Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Materiality is determined by the governing substantive law. Fed.R.Civ.P. 56(c). *Gabai v. Jacoby,* 800 F.Supp. 1149, 1153 (S.D.N.Y.

---

1. The Stradlings assert that the Release which Southland presented to them was different from the Release Agreement contemplated at the time of the signing of the "Year 2000 Amendment." They contend the second release included a release of all claims brought in the lawsuit entitled *Emil v. Sparano, et al. v. The Southland Corporation, et al.* The differences, however, are immaterial. The Stradlings do not dispute that both releases contained some identical language. It is the language common to both Releases which forms the basis for the Court's decision.

1992). Construction and legal effect of an unambiguous writing is for a court and not for a jury to decide. Summary judgment is properly used for interpreting a contract whose terms are considered by opposing parties to be clear and unambiguous, despite disagreement between the parties as to what the agreement provides. *Goldinger v. Boron Oil Co.*, 375 F.Supp. 400 (W.D.Pa.1974), *aff'd mem.*, 511 F.2d 1393, (3rd Cir.1975), *cert. denied*, 423 U.S. 834, 96 S.Ct. 59, 46 L.Ed.2d 52 (1975). The provisions of the Franchise Agreement and the "Year 2000 Amendment" are not, as a matter of law, ambiguous or susceptible to two reasonable alternative meanings.[2] Consequently, there is no basis for having a trier of fact decide between alternative interpretations proffered by the parties. *See Mellon Bank. N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 (3rd Cir.1980).

## A. The Application Of The New Jersey Franchise Practices Act To The Franchise Agreement

■ Section 4 of the New Jersey Franchise Practices Act provides:

This act applies only to a franchise (1) the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the state of New Jersey, (2) where gross sales of products or services between the franchisor and the franchisee covered by such franchise shall have exceeded $35,000 for the 12 months next preceding the institution of the suit pursuant to this act, and (3) where more than 20% of the franchisee's gross sales are intended to be or are derived from such franchise. [N.J.S.A. 56:10–4 (West 1995).]

The Stradlings submit that the Act is applicable here because the terms of the Agreement contemplate the transfer of the 7–Eleven Store Franchise to any available store, which would include a New Jersey location. They point out that Southland admits that the Stradlings were afforded the opportunity to transfer their store to another 7–Eleven convenience store location and that the Stradlings elected, in fact, to transfer their 7–Eleven franchise to Toms River, New Jersey. This, they contend, demonstrates that it was within the contemplation of the parties that a franchise could be established in New Jersey.

This argument must fail. As suggested by Southland, under this reasoning, any franchise agreement executed in a state which contains a transfer provision is properly governed by the New Jersey Act because it is conceivable that a transfer may result in the operation of a franchise in New Jersey. Such an extension of this Act was clearly not envisioned by the New Jersey legislature, which promulgated the Act to protect New Jersey franchisees from overreaching by their franchisors.[3] Otherwise, the Act would reach every franchise agreement that contained a transfer option. Suit could be brought in California for violation of the Act even though the transfer option was never exercised. Such a result, which would raise issues of constitutional dimension, is not consistent with the legislation's goal of protecting *New Jersey franchisees.* Accordingly, summary judgment in favor of Southland is warranted.

## B. The Release In The Allentown, PA Franchise Agreement Does Not Violate The New Jersey Act

■ Even assuming the New Jersey Franchise Practices Act did apply to the Allentown, PA Franchise Agreement, Southland would, nevertheless, still be entitled to summary judgment because the release contained therein does not violate the New Jersey Act. The Act prohibits a franchisor from "requir[ing] a franchisee at [the] time of

---

2. Indeed, neither party, in separately seeking summary judgment, contends that the applicable provisions are ambiguous.

3. The purpose of the New Jersey Franchise Practices Act is to protect franchisees from the economic coercion of franchisors who may be in a superior bargaining position. *Westfield Centre Service, Inc. v. Cities Service Oil Company*, 158

N.J.Super. 455, 386 A.2d 448 (1978). Section 7, the section of the Act presently at issue, was enacted to ensure that franchisors could not circumvent the requirements of the New Jersey Act by requiring franchisees to execute a release relieving the franchisor "from liability imposed by [the] act." N.J.S.A. 56:10–7

entering into a franchise arrangement to assent to a release ... which would relieve any person from liability imposed by this act." N.J.S.A. 56:10–7. This section prohibits a franchisor from requiring a release of future claims related to a New Jersey franchise as a condition precedent to the execution of a franchise agreement.

The Stradlings contend that the terminology in the Release at issue constitutes a waiver of future rights in relation to the Toms River, New Jersey franchise, and, therefore violates the provisions of the New Jersey Franchise Practices Act. In support of this assertion they submit that it contains broad language without any express terms limiting its scope. This argument also lacks merit.

The Release contains the following language:

All claims, demands, rights, duties, guarantees, obligations, debts, dues, sums of money, accounts, covenants, contracts, controversies, ˙ agreements, promises, torts, judgments, executions, liabilities, damages, injunctions, assignments, suits or causes of action, (collectively the "claims") of every kind and nature, however, or wherever arising, whether known or unknown, foreseen or unforeseen, direct, indirect, contingent or actual, which have arisen or which might or could arise under Federal, state, or local law from any relationship, incident or transaction arising or occurring under the Agreement (including any supplier-purchaser relationship) or under any agreement in connection therewith, or from the execution, operation under or termination of the Agreement, and any services to the franchisee thereunder or under any prior agreement relating to the store, *existing or arising at any time prior to or at the same time of the execution hereof,* are hereby mutually satisfied, acquitted discharged and released by Franchisee and 7–Eleven, it being the express intention of the franchisee and 7–Eleven that this release be as broad as permitted by law.

**4.** The Stradlings attempt to analogize the instant case to cases they cite which involved releases with purportedly broad language. (Plaintiffs' Brief In Support Of Summary Judgment (Dkt.

(Mutual Termination And Release (Dkt. Entry # 19, Ex. "D" at ¶ 1; emphasis added.)

The language of the Release clearly indicates that the Release is only intended to release both parties of liability for past claims, and not for future claims. In this regard, the Release pertains only to those claims "existing or arising at any time prior to or at the time of the execution hereof...."[4] As the beneficiary of the Release, *Southland has acknowledged that it has retrospective effect only and does not impact claims that may arise in connection with the operation of the New Jersey franchise.* (Dkt. Entry # 28 at 4, n. 3.) Thus, because the Stradlings are only contractually required by the Allentown 7–Eleven Franchise Agreement to release claims with respect to the Allentown 7–Eleven convenience store, which is not covered by the New Jersey Act, the Act is not violated. Therefore, Southland's motion for summary judgment will be granted.

### III. *CONCLUSION*

For the foregoing reasons, the Stradlings' motion for summary judgment (Dkt. Entry # 19), will be denied, and Southland's motion for summary judgment (Dkt. Entry # 6), will be granted.

Entry # 20 at 6.)) A review of these cases, however, reveals that they are clearly factually distinguishable from the case at bar and are inapplicable to the instant analysis.