Manuel FERREIRA, Plaintiff,

v.

Larry E. DUBOIS, Paul B. Murphy and Andrew Rego, Defendants.

Civil Action No. 95–10665–PBS.

United States District Court,
D. Massachusetts.

Sept. 18, 1996.

Manuel Ferreria, Lawrence, MA, pro se.

Nancy Akers White, Special Assistant Attorney General, Michael H. Cohen, Senior Litigation Counsel, Department of Corrections, Boston, MA, Michael H. Cohen, Supervising Counsel, Bridgewater State Hospital, Bridgewater, MA, for Defendant.

*ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 31); PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 25)*

BOWLER, United States Magistrate Judge.

Plaintiff Manuel Ferreira ("Ferreira") filed this civil rights action *pro se* seeking damages and certain equitable relief resulting from an April 1992 disciplinary hearing at the Old Colony Correctional Center ("OCCC") in Bridgewater, Massachusetts. Ferreira, a former inmate at OCCC, maintains that defendants Larry E. DuBois ("DuBois"), Commissioner of the Massachusetts Department of Correction, Paul B. Murphy ("Murphy"), Superintendent of OCCC, and Andrew Rego ("Rego"), a hearing and disciplinary officer at OCCC, violated his due process and Fifth Amendment rights in contravention of 42 U.S.C. § 1983 ("section 1983").

The parties consented to trial before this court in accordance with 28 U.S.C. § 636(c). Pending before this court are cross motions for summary judgment (Docket Entry # # 25 & 31). After conducting a hearing, this court took the summary judgment motions (Docket Entry # # 25 & 31) under advisement.

*PROCEDURAL BACKGROUND*

In seeking summary judgment, Ferreira submits that DuBois, Murphy and Rego (collectively: "defendants") violated his due process rights at the disciplinary hearing because: (1) Rego, the hearing officer, denied Ferreira the ability to present the live testimony of inmate Steven L. Johnson ("Johnson") and, instead, accepted an affidavit from Johnson which Rego then failed to consider; (2) Rego improperly and solely relied on the testimony of Mark Leary ("Leary"), the reporting officer, and his written disciplinary report which evidence was insufficient to establish Ferreira's guilt;[1] and (3) Rego denied Ferreira's request for an interpreter for one of Ferreira's witnesses, inmate Florentino Castro ("Castro"). Ferreira also disputes that defendants, sued in both their official and individual capacities, are entitled to qualified immunity. (Docket Entry # # 26 & 34).

Defendants contend they are entitled to summary judgment insofar as Ferreira received sufficient due process at the disciplinary hearing with respect to his presentation of witnesses, his request for an interpreter and the existence of sufficient evidence to support the finding of guilt. Defendants also maintain that Ferreira's state law claim for violation of regulation 430.12 of the regulations of the Department of Correction ("DOC"), 103 C.M.R. § 430.12 ("regulation 430.12"), does not give rise to a viable cause of action under state law. Alternatively, defendants move to dismiss the pendent state

---

1. Ferreira elaborates upon this argument by claiming that Rego's written reasons were insufficient. According to Ferreira, Rego did not provide an adequate explanation as to why he discredited the testimony of the inmate witnesses.

law claim given the inadequacy of the federal claim. Defendants also argue that the equitable claims are moot[2] and assert a qualified immunity defense.

The verified complaint raises four causes of action. The first and third causes of action, respectively, under the Fourteenth Amendment and for the violation of Ferreira's due process rights, are synonymous inasmuch as the Due Process Clause of the Fourteenth Amendment prescribes the unconstitutional taking of a liberty interest without due process of law. *Zinermon v. Burch,* 494 U.S. 113, 125–126, 110 S.Ct. 975, 983–984, 108 L.Ed.2d 100 (1990) (explaining the different claims available under the Due Process Clause in a section 1983 action). The second and fourth causes of action are, respectively, for defendants' alleged violation of the Fifth Amendment and regulation 430.00.[3] (Docket Entry # # 31 & 33).

Having reviewed the entire record and listened to the tape recording of the disciplinary hearing, this court finds the following facts for purposes of summary judgment.[4]

### FACTUAL BACKGROUND

On April 15, 1992, disciplinary report numbers 92–861 and 92–862 issued against Ferreira. Although the reports evolved from the same incident, disciplinary report 92–861 is the report at issue in this case. Leary is the charging officer.

Disciplinary report 92–861 cites Ferreira for the following offenses: "(1) disobeying an order of, lying to, or insolence toward staff member; (8) conduct which disrupts with the orderly running of the instit[ution]; (18) assaulting another person with any offense

against his person or property; (19) use of abusive language toward staff; [and] (33) attempting any of the above offenses, making plans to commit the above offenses or aiding another person in the above offenses shall be considered the same as commission of the offense itself." The language of these charges mirrors the disciplinary offenses listed in regulation 430.24(1), 430.24(8), 430.24(18), 430.24(19) and 430.24(33), 103 C.M.R. § 430.24.

Disciplinary report 92–861 designates the offenses as major and notes the referral of the report to the district attorney. The body of the report reads that:

On 4/15/92, at approximately 5:40 p.m., I, C.O. Leary, was assaulted by inmate Manuel Ferreira. I ordered Ferreira into the new man section following a fight in the upper program corridor. After being ordered, Ferreira became verbally abusive towards myself and officer Mark Tucker. Ferreira made the following statements, "[expletive] you, I ain't doing nothing to you guys." He further stated, "You don't know who you [two expletives] think you're dealing with." At this time, I ordered Ferreira to give me his I.D. card. Ferreira refused. I then took his I.D. which was clipped to his shirt. At this time, I again ordered Ferreira to enter the new man section. This time Ferreira lunged at me with his arms and hands swinging, yelling, "You mother [expletive]." When Ferreira's hands came in the area of my face and head, assistance was called, and he was forcibly placed in restraints. Throughout the incident, Ferreira resisted

---

**2.** These claims involve Ferreira's request for orders requiring interpreters for non-English speaking inmate witnesses at disciplinary hearings and a judicially mandated change in the DOC's regulations to provide for such interpreters.

**3.** In moving for summary judgment, neither defendants nor Ferreira adequately address the merits of the second cause of action which, due to the absence of such an argument, remains in the case.

**4.** In the event a complaint is verified, it is appropriate to consider factual averments therein

based on personal knowledge as the equivalent of an affidavit for purposes of summary judgment. *Sheinkopf v. Stone,* 927 F.2d 1259, 1262–1263 (1st Cir.1991). The verified complaint therefore comprises part of the summary judgment record.

In assessing the merits of a particular summary judgment motion, this court views the record in the light most favorable to the nonmovant. Consequently, in the event there are factual disputes and a reasonable juror could find the facts in favor of either party, this court resolves the dispute in favor of the nonmovant.

Where appropriate, factual disputes are noted. Ferreira's *pro se* status entitles him to a more liberal construction of the record.

violently, causing injury to three staff members.

Shift commander was notified. Ferreira was placed in segregation.

(Docket Entry # 27, Ex. A–1).[5]

After proper notice, the disciplinary hearing convened on April 28, 1992, with Rego as the presiding officer. At Ferreira's request, the hearing was tape recorded.

At the outset of the hearing, Ferreira avers that he presented a list of questions to Rego that he intended to propound to Johnson and Castro. In contrast to Ferreira's averment, Rego attests that, to the best of his recollection, Ferreira did not present him with a list of prepared questions for any witness.

Ferreira also provided Rego with an affidavit authored by Johnson. The transcript of the disciplinary hearing reflects Rego's statements that: "I noticed you presented an affidavit, Stephen L. Johnson. Accepted into the record and I also made a copy and provide you with a copy of it."

Ferreira attests that he advised Rego that Johnson should testify in person because "there was supporting evidence, not found in the affidavit." Ferreira further attests that, after reading the affidavit, Rego stated that he would not require Johnson's live testimony "because [Ferreira] produced an affidavit from this witness."[6] In contrast, Rego attests that Ferreira never indicated that he wished to have live testimony from Johnson. The transcript of the disciplinary hearing also fails to contain Ferreira's request.

In order to assess the need for Johnson's live testimony in lieu of the affidavit, it is helpful to compare the proposed questions and thus the proposed subject matter of the live testimony to the substantive content of the affidavit.[7] In addition to certain preliminary questions, the list of proposed questions asks Johnson: (1) what took place on the lower ramp heading back to the orientation unit; (2) whether Ferreira used any abusive language toward the officers; (3) what took place on the upper ramp; (4) how many times Ferreira was asked to enter the new man section; (5) whether Ferreira refused to enter the new man section or acted in a hostile manner; (6) whether a guard held the door open for Ferreira when he entered the new man section; (7) whether Johnson had a clear view of the interior of the new man section and what took place therein; and (8) whether Ferreira swung at the officer after the officer hit Ferreira in the face.

In the affidavit, Johnson states that he and a group of inmates were returning from the evening meal when he observed two inmates engaging in a fight for a brief period of time. A number of correction officers arrived and the alarm sounded. Johnson then heard a voice shouting, "Hey, get the [expletive] back here now." According to Johnson, Ferreira asked one of the correction officers why he was addressing the inmates in such a disrespectful manner. The correction officer then walked toward Ferreira, "snatched his identification card" and ordered him to come into a room. As Ferreira walked into the room, the correction officer punched Ferreira in the face, according to Johnson's affidavit.

Johnson's affidavit additionally details that Ferreira then asked the correction officer what was happening and that Ferreira had not done anything wrong. Johnson attests that, "I did not hear inmate Ferreira say anything or see him do anything to provoke the officer into taking such assaultive actions." Johnson then relates the following:

5. A few of the writings in the report are illegible and this court therefore used the recitation of the report contained in the transcript of the disciplinary hearing. Punctuation appears slightly different in the actual report.

6. This court does not consider Rego's statements for the truth of the matter asserted.

7. Although the affidavit contains recitations by Johnson of what Ferreira said, this court does not consider such recitations for the truth of the matter asserted. Rather, this court considers the affidavit and the statements therein for the purpose of comparing the subject matter of the affidavit with the subject matter of the proposed questions to determine whether Ferreira was afforded due process notwithstanding Rego's disallowance of Johnson's live testimony and to determine whether a reasonable hearing officer would consider the live testimony irrelevant, unnecessary or duplicative.

Inmate Ferreira put his hands up to his face to prevent getting hit in the face again while trying to back out of the doorway. Moments later, another correctional officer appeared, grabbing the inmate from behind, and threw him to the floor. As the officer raised his fist in an attempt to hit Ferreira again, two other officers grabbed me and escorted me into the nurse's station and placed me in a cell to prevent me from witnessing any further action. I was still able to hear inmate Ferreira screaming in a very loud tone.

(Docket Entry # 27, Ex. C).[8]

Rego began the disciplinary hearing by reading the charges and the description of the offenses contained in disciplinary report 92–861 into the administrative record. Rego then advised Ferreira of his right to remain silent which he exercised.

Leary testified first at the hearing. He confirmed that the disciplinary report was an accurate account of the incident. He also noted that there had been a fight and that there was a question as to Ferreira's involvement in that fight. Leary then stated that Ferreira became verbally abusive. Leary testified that he asked Ferreira for his identification card and then removed the card from Ferreira. According to Leary's testimony, Ferreira then lunged at him swinging violently and yelling. Leary therefore deemed it necessary to restrain Ferreira.

Ferreira chose not to ask Leary any questions. Rego then accepted Johnson's affidavit into the record and Castro took the stand to testify on Ferreira's behalf.

The transcript of the disciplinary hearing reflects a number of instances where Castro's testimony was inaudible.[9] Ferreira initially asked Castro what happened on April 15th. Castro testified that, "the big tall officer ... was very, very angry for no reason at all and he called me first." The officer then

"asked for my I.D." and Castro gave him the identification card.

The transcript further shows that Castro then stated that, "the I.D. officer asked [Ferreira] ... 'What happened to you?'" According to Castro, Ferreira replied, "No, what happened to you, why you call me like this, I don't do nothing." Castro then testified that he "see the arm moving" and "tried to go back, see what happened and this time I see the tall guy call and I see the tall guy punch [Ferreira]." Castro related that Ferreira then said, "What happened, why do you punch me, I don't do anything."[10]

Castro also testified that he could not remember whether the tall officer asked Ferreira for his identification card. When questioned by Ferreira, Castro added that, "I believe you don't swear because the officer swear you and you respond to officer." Castro reiterated that the officer was angry and that Ferreira had said he had done nothing. Castro then related his attempt, albeit unsuccessful, to alert a lieutenant to the problem but:

The lieutenant says, "I don't have no time for that. I have to take care of (inaudible) hospital." So I walked away. After that, each officer go over there and asked me questions in the room and what I saw and what happened and I tell the sergeant what I say here.

(Docket Entry # 28).

Thereafter, Castro's testimony becomes somewhat disjointed. The transcript reads as follows:

Basically, I tried to tell the officer, I tried to tell the lieutenant what happened because he don't do nothing (inaudible) don't do nothing at all. I say to (inaudible) we want to try to walk in the room because when the officer came in the way for the problem, for the (inaudible) fight or whatever it was, one officer was confused and tell me to go back and one officer come

---

**8.** Punctuation marks are altered slightly from the affidavit.

**9.** As previously noted, the material issue with respect to Castro is whether he needed the services of an interpreter.

**10.** This court does not consider Castro's recitation of what Ferreira said for the truth of the matter asserted or that, in fact, Ferreira said these words. Rather, this court considers the testimony for the purpose of evaluating Castro's understanding of and ability to communicate in English.

and that's why he tell me go back (inaudible) so one officer come (inaudible), say "Hey, where are you going?" So we try to walk all the way to the unit. So they called first ... the I.D. officer called me first and then I see where they call, they say Manuel, and ... they was so mad.

(Docket Entry # 28).

At this point in Castro's testimony, Ferreira began to describe the incident. Rego asked Ferreira a question to which Ferreira replied, "No, no, no." Rego then asked Ferreira whether he would answer questions or remain silent.[11] The transcript of the hearing concludes shortly thereafter.

Ferreira asseverates that after Rego turned off the tape recording Ferreira repeated his request to Rego that Castro should have been supplied with an interpreter. In the verified complaint, Ferreira attests that Castro did not have a command of the language. Ferreira also states that Rego said that, "I had a little trouble understanding him, but I think I can make it out."[12] Similarly, Rego avers that he "was able to understand most, if not all, [of] Castro's testimony, and that I understood all the key points [of] the testimony."[13]

In the statement of evidence relied upon, Rego explains that:

I simply don't believe the inmate witnesses account of the incident and have based guilt on the testimony of the reporting officer coupled with the written report!

The inmate was disruptive to the security and orderly running of the institution by assaulting the [reporting officer] C/O Leary who was attempting to secure the corridor due to a(sic) existing emergency within the institution.

(Docket Entry # 31, Ex. E).

### DISCUSSION

While both parties move for summary judgment (Docket Entry # # 25 & 31), this court analyzes the cross motions for summary judgment separately and under different frameworks. "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Barbour v. Dynamics Research Corporation,* 63 F.3d 32, 36–37 (1st Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 914, 133 L.Ed.2d 845 (1996) (quoting Rule 56, Fed. R.Civ.P.). In this respect, a "genuine" issue means that "the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, [is] sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.), *cert. denied,* 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995). Likewise, "'material' means that a contested issue of fact has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *Smith v. F.W. Morse & Company, Inc.,* 76 F.3d 413, 428 (1st Cir.1996).

Once the moving party makes a proper showing as to the "'absence of evidence to support the nonmoving party's case,' the burden of production shifts to the nonmovant." *Dow v. United Brotherhood of Carpenters and Joiners of America,* 1 F.3d 56, 58 (1st Cir.1993) (citation omitted). "As to issues on which the summary judgment target bears the ultimate burden of proof, [however, he] cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995); *see also Webb v. I.R.S.,* 15 F.3d 203, 205 (1st Cir.1994). In general, the role of a summary judgment motion "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actual-

---

**11.** Ferreira attests that he "was not expecting such interference." (Docket Entry # 5).

**12.** This court does not consider Ferreira's statement for the truth of the matter asserted.

**13.** The copy of the affidavit provided to this court is incomplete in the sense that a number of the sentences lead off the edge of the page. This court assumes that the missing word "of" is contained in the original affidavit.

ly required." *Coyne v. Taber Partners I*, 53 F.3d 454, 457 (1st Cir.1995).

In addition to the qualified immunity issue, the cross motions for summary judgment generally dispute the merits of Ferreira's due process claims that: (1) Johnson should have testified in person; (2) Castro should have been supplied an interpreter; (3) the evidence did not support a guilty finding; and (4) Rego improperly relied solely on the reporting officer's testimony and his written report.

### I. *DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 31)*

To state a claim under section 1983, the complaint must show "the existence of a federal constitutional right, and some deprivation of these federal rights as a result of official action." *Willhauck v. Halpin*, 953 F.2d 689, 703 (1st Cir.1991). The issue therefore arises as to the existence and the extent of an inmate's federal due process rights in the context of a prison disciplinary hearing.

█ In 1992 Massachusetts law provided for the award of good time credits to reduce an inmate's sentence in the event he observed the rules of the institution. It also provided for the revocation of such good time credits in the event an inmate was guilty of serious misconduct. Mass. Gen. L. ch. 127, § 129. Where, as here, a state statute creates "a liberty interest in a shortened prison sentence which results from good-time credits, revocable only if the inmate is guilty of serious misconduct, that inmate is entitled to the procedural protections outlined in *Wolff.*" *McGuinness v. Dubois*, 75 F.3d 794, 797 n. 3 (1st Cir.1996) (referring to *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), in light of the more recent decision, *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

As determined in *Wolff*, an inmate facing disciplinary proceedings has "a qualified right to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."

*McGuinness v. Dubois*, 75 F.3d at 797–798 (summarizing one of the three due process protections an inmate receives in light of *Wolff*). Interpreting *Wolff*, the First Circuit, in a decision issued after oral argument on the motions for summary judgment, reversed the lower court's finding after a bench trial that the defendants violated section 1983 by not allowing the live testimony of inmate/witnesses at a prison disciplinary hearing. *McGuinness v. Dubois*, 75 F.3d at 799–800. Similar to the case at bar, the hearing officer in *McGuinness* had affidavits from the inmate/witnesses. In reviewing the affidavits, the hearing officer rejected the inmate's argument that live testimony was necessary because the inmate/witnesses would be " 'able to explain what they saw much better if given a chance to give an oral testimony.' " The court in *McGuinness* emphasized that the inmate failed to give an adequate explanation for the necessity of the live testimony and that the denial of the request was based on a general policy rooted in institutional security concerns. In such circumstances, the court determined that the defendants need only prove that "the denial of live testimony was neither arbitrary nor capricious and that [the hearing officer] did not clearly abuse his considerable discretion." *McGuinness v. Dubois*, 75 F.3d at 798 & 800 (citations omitted); *accord Smith v. Massachusetts Department of Correction*, 936 F.2d 1390, 1399–1400 (1st Cir.1991) (recognizing that prison officials' discretion in failing to call live inmate witness is subject to judicial review in the event of abuse); *Hurney v. Carver*, 602 F.2d 993, 995–996 (1st Cir.1979) (affirming motion to dismiss complaint where no facts alleged that hearing officer's denial of request for witnesses was "for an inappropriate reason").

In the case at bar, Ferreira generally attests that Johnson would have testified to information that was missing from the affidavit. Such a generalized averment that Johnson's live testimony would provide more detail is insufficient in light of *McGuinness*.

Ferreira goes farther than the inmate in *McGuinness*, however, by providing Rego with a list of proposed questions for Johnson. Whether the proposed questions and, hence,

Johnson's live testimony, are unnecessary need not be resolved on summary judgment due to defendants' failure to offer any reason for Rego's decision to deny Johnson's live testimony. Instead, defendants steadfastly maintain that Ferreira never requested that Johnson testify in person. Defendants accurately point out that neither the transcript nor the tape recording reflect Ferreira's request that Johnson testify in person. Ferreira also never returned a completed form requesting Johnson as a witness. (Docket Entry # 33, Supplemental Affidavit of Rego). "[Failure] to request" the live testimony of an inmate/witness "obviously precludes any due process violation." *Harrison v. Seay,* 856 F.Supp. 1275, 1281 (W.D.Tenn.1994). Further, DOC disciplinary rules provide that an inmate's failure to return the witness form prior to the disciplinary hearing may, "in the discretion of the hearing officer, constitute a waiver of the inmate's rights to call witnesses." 103 C.M.R. § 430.11(5).

■ On summary judgment, however, this court must view the record in Ferreira's favor. He attests that he stated to Rego that Johnson "should be allowed to testify because there was supporting evidence, not found in the affidavit, which could have been obtained from Mr. Johnson." (Docket Entry # 5). While the record weighs heavily toward a finding that Ferreira never requested Johnson's live testimony, a reasonable juror could resolve the issue in Johnson's favor due to his averment.[14] Accordingly, it is inappropriate to allow defendants summary judgment on the basis of their contention that Ferreira never asked Rego to have Johnson testify in person at the disciplinary hearing.

■ Thus, assuming that Ferreira requested Johnson's live testimony, the record is silent as to any reason for Rego's decision to proceed solely with Johnson's affidavit.

Prison officials do not, necessarily, have to support their denial of live testimony at a disciplinary hearing in the administrative record. Instead, prison officials "may satisfy due process by presenting testimony in court if the deprivation of a liberty interest is challenged" due to the denial of live testimony. *McGuinness v. Dubois,* 75 F.3d at 799; *see also Ponte v. Real,* 471 U.S. 491, 497, 105 S.Ct. 2192, 2196, 85 L.Ed.2d 553 (1985) (prison officials may be required to explain in limited manner the reason for their denial of witness testimony either in the administrative record or in court).[15]

■ As intimated above, however, to date, defendants do not provide any "testimony in court" to justify Rego's denial of Johnson's live testimony other than the reason that Ferreira never made a request for Johnson to testify in person. In fact, defendants fail to present an argument as to the reason for Rego's decision. Rego does not aver that he rested his decision on a waiver within the meaning of 103 C.M.R. § 430.11(5) or that he viewed Johnson's testimony as unnecessary.[16] Defendants bear the burden of persuasion as to the existence and sufficiency of the institutional concerns for denying an inmate's request to call a witness. *Smith v. Massachusetts Department of Correction,* 936 F.2d at 1399–1400 (1st Cir.1991) (summary judgment inappropriate because record failed to indicate "any reasons for the denial of" the request to call the inmate/witness). Given the current record, therefore, defendants fail to show an adequate basis or supply sufficient reasons for Rego's decision to deny the live testimony of Johnson.

Turning to the next alleged denial of due process, Ferreira asserts that the evidence did not support a guilty finding and, instead, that Rego improperly relied solely on the

**14.** It is also worth noting that Johnson was articulate and convincing at oral argument and will likely make a very credible witness.

**15.** The First Circuit decision of *Hurney v. Carver,* 602 F.2d 993, 995–996 (1st Cir.1979) (upholding dismissal of section 1983 claim alleging that disciplinary board chairman did not state his reasons for denying inmate's request to call witnesses), predated the 1985 *Ponte* decision.

**16.** With respect to the latter reason, *"Wolff* states that 'prison officials must have the necessary discretion to keep the hearing within reasonable limits', and may deny a request when they think a witness' testimony will be irrelevant or unnecessary." *Hurney v. Carver,* 602 F.2d at 996. Prison officials therefore have the discretion to deny live witness testimony where such testimony is irrelevant or unnecessary. *Turner v. Caspari,* 38 F.3d 388, 391 (8th Cir.1994).

**1254**

reporting officer's testimony and his written report. Ferreira additionally contends that it is doubtful that Rego even considered Johnson's affidavit in the course of issuing a decision. Defendants submit that these arguments are without merit.

■ Insofar as Ferreira challenges the adequacy of the written findings, due process only requires "a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985); *accord Wolff v. McDonnell,* 418 U.S. 539, 564, 94 S.Ct. 2963, 2978–2979, 41 L.Ed.2d 935 (1974). The record is undisputed that Rego identified the following evidence and gave the following reasons for his decision. In Rego's "Statement of Evidence Relied Upon to Support Finding," Rego states that he chose to believe the testimony of Leary and the findings in his written report. He also explains that he simply did not "believe the inmate witnesses account of the incident." Second, Rego reasoned that, "The inmate was disruptive to the security and orderly running of the institution by assaulting the (R/O) C/O Leary who was attempting to secure the corridor due to a(sic) existing emergency."

These written findings both identify the evidence relied upon, to wit, Leary's testimony and his written report, and explain the reasons for the disciplinary action, to wit, that Ferreira posed a threat to institutional security by assaulting an officer during an existing emergency situation. This statement of the evidence relied upon and the reasons for the decision thereby satisfied as a matter of law the aforementioned standard initially set forth in *Wolff v. McDonnell,* 418 U.S. at 564, 94 S.Ct. at 2978–2979.

■ Insofar as Ferreira challenges the sufficiency of the evidence to support his guilt, there need only be "some evidence" to support Rego's findings. *Superintendent v. Hill,* 472 U.S. at 454, 105 S.Ct. at 2773. Leary's testimony and disciplinary report number 92–861 suffice to meet the requisite modicum of evidence. *See, e.g., Superintendent v. Hill,* 472 U.S. at 456–457, 105 S.Ct. at 2774–2775 (testimony from prison guard and copies of his written report characterized as meager but sufficient to support disciplinary board's decision).[17] Ascertaining whether the some evidence "standard is satisfied does not require ... independent assessment of credibility of witnesses, or weighing the evidence." *Superintendent v. Hill,* 472 U.S. at 455, 105 S.Ct. at 2774. Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill,* 472 U.S. at 455–456, 105 S.Ct. at 2774; *accord Turner v. Caspari,* 38 F.3d 388, 392 n. 5 (8th Cir.1994) (quoting this passage from *Hill*). It was therefore within the discretion of Rego not to believe the testimony of "the inmate witnesses."[18] Having listened to Leary's live testimony essentially affirming the statements in his written

---

**17.** In *Hill,* there was no direct evidence that the inmate/defendant was the assailant because the prison guard only saw the inmate/defendant together with two other inmates fleeing the scene of the assault. Such evidence was nevertheless sufficient to reverse the Massachusetts Supreme Judicial Court's affirmance of the lower court judgment in favor of the inmate. *Superintendent v. Hill,* 472 U.S. at 456–457, 105 S.Ct. at 2774–2775. In the case at bar, there is direct evidence by Leary that Ferreira either attempted or did in fact disobey an order of a staff member, disrupt the security of OCCC and use abusive language.

**18.** The fact that Rego refers to the witnesses in the plural in his written findings belies Ferreira's contention that Rego did not consider Johnson's affidavit. The transcript and the tape recording both establish that Rego accepted the affidavit into evidence. The transcript records the following statements by Rego:

I noticed that you [referring to Ferreira] presented an affidavit, Stephen L. Johnson. Accepted into the record and I also make a copy and provide you with a copy.

(Docket Entry # 28). Ferreira's averment that "the affidavit of Steven L. Johnson was never mentioned, thus being tantamount to not being considered" (Docket Entry # 5, ¶ 36) is an opinion unsupported in the record which cannot defeat summary judgment. *See Smith v. Morse & Company, Inc.,* 76 F.3d 413, 428 (1st Cir.1996) (on summary judgment, court disregards "conclusory allegations, improbable inferences, and unsupported speculation"). Although Rego did not refer to Johnson's affidavit by name in his written findings, he did refer to Ferreira's "witnesses," i.e., Castro and Johnson, the only two witnesses offered by Ferreira.

report and having read the written report into evidence at the disciplinary hearing, as a matter of law Rego had the requisite "some evidence" to support his findings.

Defendants additionally seek summary judgment with respect to Ferreira's claim that Castro was denied an interpreter. They assert that Rego had the discretion to determine that Castro did not require the services of an interpreter. Defendants further contend that Castro did not require the services of an interpreter because Rego sufficiently understood Castro's testimony.[19]

■ Ferreira relies on cases discussing the need for an interpreter in criminal prosecutions. Notwithstanding Ferreira's acknowledgement of the differences between a prison disciplinary hearing and a criminal prosecution, these differences militate against transporting the principles applicable to criminal trials to prison disciplinary hearings. *Langton v. Berman,* 667 F.2d 231, 234 (1st Cir.1981) (recognizing "essential differences between a disciplinary hearing and a criminal trial"). Although the Due Process Clause protects against arbitrary action in prison disciplinary proceedings, it "provides less protection than in criminal prosecutions." *Duffy v. Riveland,* 88 F.3d 1525, 1536 (9th Cir.1996).

■ Ferreira also points to regulation 430.12(2). This DOC regulation under the disciplinary proceedings chapter is entitled "Representation of Inmates and the Recording of Proceedings." 103 C.M.R. § 430.12. Both the title and the substance of subparts (1) and (2) of the regulation demonstrate that it governs the parameters of an inmate's representation by an attorney, law student or staff member at a disciplinary proceeding. Subpart (2) reads as follows:

> (2) Where an inmate is illiterate or non-English speaking or where the issues presented are complex, the inmate shall, if he is unable to secure legal representation, be

afforded the right to be assisted by a staff member designated by the Superintendent. 103 C.M.R. § 430.12(2). When referring to an inmate charged with the violation of a disciplinary rule, the DOC regulations uniformly refer to the individual as "the inmate." When referring to an inmate/witness offering testimony at a disciplinary hearing, the DOC regulations uniformly refer to the individual as a "witness." Ferreira's position that regulation 430.12(2) mandates the use of an interpreter to assist a non-English speaking witness therefore misconstrues the meaning of the word "inmate" in subpart (2). Moreover, the regulation does not speak to the use of interpreters but, rather, to the use of legal representatives to assist an inmate in his defense.

■ The regulation which applies to inmate/witnesses is located at 103 C.M.R. § 430.14. Subparts (4) and (6) expressly govern the calling and the questioning of "witnesses" at a disciplinary hearing. Similar to the provisions governing representation of the inmate/defendant, these provisions are silent with respect to the use of interpreters for inmate/witnesses. Consequently, the DOC regulations neither create a cause of action, a liberty interest or, as Ferreira maintains, a "presumptive right" to an interpreter for an inmate/witness. Furthermore, given the subject matter of regulation 430.12(2) and the silence of regulation 430.14 with respect to supplying interpreters for inmate/witnesses, the regulations do not support Ferreira's contention that there is a constitutional right to the appointment of an interpreter for a non-English speaking inmate/witness. Accordingly, the pertinent issue is whether, irrespective of the DOC regulations, there is a federal constitutional right to the services of an interpreter for an inmate/witness such as Castro.[20] *See McGuinness v. Dubois,* 75 F.3d at 798 (recognizing that federal constitutional standards define the contours of procedural due process and that the failure of a disciplinary board to

---

**19.** Defendants also contend that Ferreira never requested an interpreter. Construing the record in Ferreira's favor, however, a rational juror could conclude that Ferreira requested interpreter services in light of Ferreira's averments that he informed Rego that Castro may need an inter-

preter and that an interpreter should have been provided (Docket Entry # 5, ¶¶ 18 & 30).

**20.** Neither party identifies a federal statute for the creation of a right to an interpreter in prison disciplinary hearings for inmate/witnesses.

obey its own regulation "would constitute a denial of due process if the regulation were mandated by the Constitution or federal law"); *see also Zinermon v. Burch,* 494 U.S. 113, 124–128, 110 S.Ct. 975, 982–985, 108 L.Ed.2d 100 (discussing circumstances in which state remedies are relevant to section 1983 due process claim).

This constitutional issue is one of first impression in this circuit as well as in other circuits. In fact, after a thorough search of federal case law, this court was unable to locate any reported cases involving whether the denial of an interpreter to an inmate/witness during a prison disciplinary hearing violates the Due Process Clause under section 1983. In essence, Ferreira asks for an expansion or elaboration of the procedural protections outlined in *Wolff* for disciplinary hearings which, as in the case at bar, result in the loss of good time credits.

Determining what process is due under the Due Process Clause is governed by federal constitutional law. *Russell v. Coughlin,* 910 F.2d 75, 77–78 & n. 1 (2d Cir.1990); *accord See McGuinness v. Dubois,* 75 F.3d at 798 ("federal constitutional standards define the requirements of procedural due process"). As determined in *Wolff* and previously noted, an inmate/defendant has "a qualified right to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."[21] *McGuinness v. Dubois,* 75 F.3d at 798 (citing *Wolff*). It is also a "fundamental requirement of due process" that an individual be afforded an opportunity to be heard "in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). Arguably, the inmate/defendant's qualified right to call witnesses might require that the witness be able to understand the questions posed at the disciplinary hearing. Stated otherwise, being heard in "a meaningful manner" might encompass providing interpreter services to a key inmate/witness in a disciplinary hearing involving differing eyewitness accounts of an altercation in the event the inmate/witness cannot understand English.

Notwithstanding the absence of federal case law with respect to providing interpreter services to inmate/witnesses as contravening due process, there are a few reported cases concerning the denial of due process through the failure to provide interpreter services to non-English speaking inmate/defendants at a prison disciplinary hearing. *See Monterey v. Mahoney,* 1992 WL 18261 (S.D.N.Y. Jan.24, 1992); *Gabai v. Jacoby,* 800 F.Supp. 1149 (S.D.N.Y.1992); *Powell v. Ward,* 487 F.Supp. 917, 932 (S.D.N.Y.1980), *modified on other grounds,* 643 F.2d 924 (2d Cir.), *cert. denied,* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981); *see also Clarkson v. Coughlin,* 898 F.Supp. 1019, 1040 (S.D.N.Y.1995). The most relevant case, *Powell v. Ward,* held that "due process requires that Spanish speaking inmates who cannot read and understand English must be given notice and statements in Spanish or provided with a translator, *who should be present at the hearing in any event."* *Powell v. Ward,* 487 F.Supp. at 932 (emphasis added).[22]

---

**21.** In discussing the right of an inmate/defendant to the services of either retained or appointed counsel at a disciplinary hearing, the Court in *Wolff* placed particular emphasis on illiterate inmates who were unable to understand the issues and who lacked the ability to present sufficient evidence to refute the charges. *Wolff v. McDonnell,* 418 U.S. at 570, 94 S.Ct. at 2981–2982. The pertinent passage reads as follows:

At this stage of the development of these procedures we are not prepared to hold that inmates have a right to either retained or appointed counsel in disciplinary proceedings. Where an illiterate inmate is involved, however, or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff.

*Wolff v. McDonnell,* 418 U.S. at 570, 94 S.Ct. at 2981–2982. Although this passage does not speak directly to the issue of providing inmate/witnesses with interpreter services, it nevertheless places emphasis on providing aid to illiterate inmate/defendants.

**22.** For reasons explained below, however, this court expresses no opinion at *this* time as to the merits of whether the Due Process Clause requires prison officials to supply interpreter services to inmate/witnesses who cannot understand

In order to resolve the summary judgment motions, however, this court need not decide at this time the constitutional issue of whether the Due Process Clause encompasses supplying interpreter services to inmate/witnesses who cannot understand English at a prison disciplinary hearing. *See United States v. Raposa,* 84 F.3d 502, 506 (1st Cir.1996) (quoting *New England Legal Foundation v. Massachusetts Port Authority,* 883 F.2d 157, 176 (1st Cir.1989), for the principle that, " 'longstanding precedent' requires courts to 'avoid ruling on constitutional issues when non-constitutional grounds are dispositive' "). This is because there are genuine issues of material fact as to whether Castro sufficiently understands the English language in order to communicate his version of the events which transpired on April 15, 1992.[23]

Rego attests that, "I was able to understand most, if not all, [of] Castro's testimony, and that I understood all the key points [of] the testimony." [24] The transcript of the disciplinary hearing and the tape recording contain inaudible sections but generally suggest that Castro understood the import of most of the questions posed and answered them accordingly. In contrast, Ferreira avers that at the disciplinary hearing, "Castro, proceeded to state, with difficulty and without a command of the language, what he observed on the 15th." The record does not contain an affidavit from Castro.

Whereas the inmate/plaintiff in *Gabai* failed to rebut the sworn affidavits offered by the defendants that he understood English and therefore did not require the services of a Hebrew interpreter at his prison disciplinary hearing, *see Gabai v. Jacoby,* 800 F.Supp. at 1152–1153 & 1156 (allowing the defendants' motion for summary judgment in section 1983 action alleging denial of due process), Ferreira manages to rebut the evidence in the record in order to create a factual dispute with respect to Castro's ability to understand English. If, at trial, the jury finds that Castro was able to effectively communicate without requiring the services of an interpreter, then this court need not decide the constitutional issue because there will be no factual basis to find a violation of due process. *See generally, Bonner v. Arizona Department of Corrections,* 714 F.Supp. 420, 423 (D.Ariz.1989) (noting that if the defendants could establish that the inmate could adequately communicate without the use of a qualified interpreter then there was no discrimination under Civil Rights Restoration Act).

Defendants additionally maintain that they are entitled to qualified immunity. Qualified immunity shields public officials performing discretionary functions from civil damages. *Santiago v. Fenton,* 891 F.2d 373, 386 (1st Cir.1989). If applicable, the defense is available to defendants sued in their individual capacities. *See Shabazz v. Coughlin,* 852 F.2d 697, 700 (2d Cir.1988); *see also Febus–Rodriguez v. Betancourt–Lebron,* 14 F.3d 87, 91 n. 3 (1st Cir.1994) ("[q]ualified immunity confers immunity only from individual-capacity suits, such as suits for money damages"). Further, qualified immunity does not shield defendants from prospective injunctive relief. *Knox v. McGinnis,* 998 F.2d 1405, 1412–1413 (7th Cir.1993). The standard to establish qualified immunity, however, "is not demanding," *Ricci v. Urso,* 974 F.2d 5, 6 (1st Cir. 1992), and is ordinarily resolved prior to trial. *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 536–37, 116 L.Ed.2d 589 (1991).

Qualified immunity exists insofar as defendants' " 'conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known.' " *Elliott v. Cheshire County,* 940 F.2d 7 (1st Cir.1991) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The requirements are twofold in the sense that: (1) a clearly established statutory or constitutional law must exist at the time of the conduct in question; and (2) a reasonable official would have

---

English. Nor should the parties use the above statements as the law of this case or as an indication that this court is inclined to decide the issue in a particular manner.

23. A later finding by the jury that Castro can understand English would obviate the need to address the constitutional issue.

24. See footnote number 13.

known that his conduct violated this right. *Frazier v. Bailey*, 957 F.2d 920 (1st Cir.1992) (stating that *Harlow* requires examination of these two issues). Thus, even when rights are clearly established, "qualified immunity protects a governmental official 'if it was objectively reasonable for the official to believe that his acts did not violate those rights.'" *Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir.1990). The relevant question on summary judgment "'is whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct.'" *Febus–Rodriguez v. Betancourt–Lebron*, 14 F.3d at 91.

The qualified immunity defense leaves "'"ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law."'" *Rivera v. Murphy*, 979 F.2d 259, 263 (1st Cir.1992) (quoting *Hunter v. Bryant*, 502 U.S. at 229, 112 S.Ct. at 537, quoting *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). Reasonable errors therefore do not remove an official's conduct from the protection afforded by the defense. *See Rivera v. Murphy*, 979 F.2d at 263 n. 1.

With respect to the interpreter issue, there simply was no clearly established law in April 1992 of which a reasonable person should have known. Although the right of a non-English speaking inmate/defendant to have an interpreter present at a prison disciplinary hearing *may* have been clearly established in light of the 1980 decision in *Powell v. Ward*, 487 F.Supp. at 932; *see also Monterey v. Mahoney*, 1992 WL 18261 (S.D.N.Y. Jan.24, 1992) (wherein the plaintiff acknowledged that the right was clearly established), in April 1992 there were no reported decisions concerning whether due process encompassed providing interpreter services to a non-English speaking inmate/witness at a prison disciplinary hearing. "The absence of specific authority directly on point," however, does not necessarily "preclude a finding that the law was clearly established." *Shabazz v. Coughlin*, 852 F.2d 697, 701 (2d Cir.1988). Nevertheless, the "unlawfulness must be ap-

parent in light of preexisting law." *Gittens v. Lefevre*, 891 F.2d 38, 42 (2d Cir.1989).

Prior to April 1992 the First Circuit had indicated a tendency to defer to prison officials' discretion and to await the results of the efforts of such officials to devise procedural protections in conformity with *Wolff*. *See Langton v. Berman*, 667 F.2d 231, 235 (1st Cir.1981). Moreover, prior to April 1992 no reported decision in the First Circuit had even addressed the broader issue of a non-English speaking inmate/defendant's due process right to an interpreter at a disciplinary hearing which resulted in the forfeiture of earned good time credits. Consequently, in April 1992 it was not clearly established that procedural due process afforded an inmate/defendant the right to have interpreter services for a non-English speaking inmate/witness at a prison disciplinary hearing. Nor was it clearly established that an inmate/defendant had a right to require the hearing officer to query the inmate/witness as to his ability to speak and/or comprehend English. Accordingly, Rego, to the extent he is sued in his individual capacity, is entitled to qualified immunity with respect to the interpreter issue.

Turning to the issue of Rego's denial of live testimony from Johnson, in April 1992 it was clearly established law that an inmate had a qualified right to call witnesses and to present documentary evidence when not "unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell*, 418 U.S. at 566, 94 S.Ct. at 2979; *Langton v. Berman*, 667 F.2d 231, 234 (1st Cir.1981) (quoting *Wolff*). It was also clearly established that prison officials had the discretion to deny live witness testimony if duplicative of other testimony, *see Langton v. Berman*, 667 F.2d 231, 234 (1st Cir.1981), untimely, *see Smith v. Massachusetts Department of Correction*, 936 F.2d 1390, 1400 (1st Cir.1991), irrelevant or unnecessary. *See Hurney v. Carver*, 602 F.2d 993, 996 (1st Cir.1979). Indeed, prison officials generally had significant leeway to make decisions provided they could establish that the denial of live witness testimony was neither arbitrary nor capricious. *See Smith v. Massachusetts Department of Correction*, 936 F.2d at 1399.

In addition, it was clearly established that prison officials were required to give a limited explanation in the administrative record or in court testimony of their reasons for not allowing a witness to testify at a prison disciplinary hearing. *Ponte v. Real*, 471 U.S. at 497, 105 S.Ct. at 2196. On the other hand, as of April 1992, the First Circuit read *Ponte* as not requiring "an explanation of every curtailment of an inmate's questioning of a witness during a disciplinary hearing." *Smith v. Massachusetts Department of Correction*, 936 F.2d at 1400.

■ In the case at bar, Rego refused to allow Johnson to testify in person.[25] Rego also failed to state his reasons in the administrative record for denying Ferreira's request to present Johnson's live testimony. At the time of the April 1992 hearing, however, a reasonable hearing officer could have believed that his actions were lawful because he could supply reasons at a later time in court testimony, if necessary. *See Floyd v. Farrell*, 765 F.2d 1, 5 (1st Cir.1985) (recognizing that qualified immunity is not a test based on hindsight). Moreover, in light of Johnson's affidavit and the similar subject matter of the questions which Ferreira proposed to ask Johnson at the disciplinary hearing, it was objectively reasonable to believe that Rego acted within his discretion to deny the live testimony on the basis that such testimony was largely duplicative of the statements in the affidavit and/or unnecessary.

■ Accordingly, Rego is entitled to qualified immunity with respect to the denial of live testimony from Johnson insofar as he is sued in his individual capacity. With respect to the alleged claim that the evidence was insufficient to sustain a finding of guilt, it was objectively reasonable to believe that Rego's written findings were adequate within the meaning of *Wolff* and that there was some evidence to support such findings. In the alternative, therefore, Rego is also entitled to qualified immunity in his individual capacity for these claims.[26]

■ This analysis is equally applicable to DuBois and Murphy thereby entitling these defendants to qualified immunity to the extent sued in their individual capacities. Murphy did little more than deny Ferreira's appeal on May 7, 1990. (Docket Entry # 31, Ex. K; Docket Entry # 5, ¶ 37). On May 12, 1992, Murphy recommended the forfeiture of 60 days good time. The applicable form contains his comment that the recommendation "is intended to make the inmate realize the seriousness of his actions" and that, "Assaults on staff will be treated with utmost severity." Thereafter, DuBois notified Ferreira of the forfeiture of good time credits as recommended in Rego's disposition. Not only does such conduct fail to establish a violation of Ferreira's constitutional right to due process, but a reasonable prison official would not, for example, have known that Rego's failure to provide reasons for his decision to deny Johnson's live testimony violated Ferreira's clearly established due process rights. Even viewing the record in Ferreira's favor, it was objectively reasonable for both Murphy and DuBois to believe that their conduct did not violate Ferreira's clearly established due process rights in any respect.

Defendants raise three additional arguments in seeking summary judgment. First, DuBois and Murphy maintain that they are not liable in their supervisory capacity. Second, defendants submit that this court should decline to exercise pendent jurisdiction over the state law claim that they violated regulation 430.00. Alternatively, defendants contend that violating regulation 430.00 does not give rise to civil liability for monetary damages. Third, defendants argue that Ferreira's claims for declaratory relief are moot and/or that Ferreira lacks standing to assert such claims in light of his release from OCCC.

---

**25.** Notwithstanding contrary evidence in the record, "When a defendant moves for summary judgment based on the doctrine of qualified immunity, the court must review the facts in the light most favorable to the plaintiff." *Febus–Rodriguez v. Betancourt–Lebron*, 14 F.3d at 89.

**26.** This court previously determined that there were no constitutional violations as a matter of law with respect to these claims. The finding of qualified immunity is therefore an alternative basis to allow summary judgment at least with respect to monetary damages.

With respect to the first argument, which is two sentences in length,[27] it is not readily apparent that Ferreira is suing Murphy or DuBois in their supervisory capacity.[28] Instead, Ferreira identifies the specific nonsupervisory acts of these defendants which personally involve them in the alleged denial of his constitutional rights.

Turning to the pendent jurisdiction argument, defendants contend that the dismissal of Ferreira's "sole" federal claim militates in favor of dismissing the pendent state law claim on the basis of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and its progeny. Notwithstanding the dismissal of an individual capacity suit against defendants for violation of Ferreira's due process rights, Ferreira also brings a claim for the violation of his Fifth Amendment rights. (Docket Entry # 5, ¶ 41). Defendants did not move for summary judgment on the Fifth Amendment claim. This claim therefore remains in the case as does the due process claim involving the interpreter and the Johnson affidavit issues against defendants in their official capacity. Defendants' argument to dismiss the pendent state law claim is therefore premature.

Defendants alternatively seek dismissal of the state law claim on the merits. In its entirety, the pendent state law claim alleges that, "Defendants' (sic) violated Code of Massachusetts Regulations 103 C.M.R. § 430:00." (Docket Entry # 5, ¶ 43). Logically and given the tenure of Ferreira's arguments, the regulations at issue are 430.12(2), 430.14(4) and 430.14(6). These regulations do not, in and of themselves, however, create a private cause of action for damages or other relief for an inmate. In fact, Ferreira forthrightly acknowledges that the regulations do not confer a right of action. He nevertheless submits that they confer due process rights under the Fourteenth Amendment.

To the extent based solely on the regulations, the fourth cause of action is not viable. The regulations do not expressly confer such a cause of action. Nor do they create an implied cause of action on behalf of an inmate. *See Martino v. Hogan*, 37 Mass. App.Ct. 710, 643 N.E.2d 53, 60 (1994), *review denied*, 419 Mass. 1106, 646 N.E.2d 1070 (1995).

Furthermore, the DOC regulations do not leave an inmate remediless. Rather, they require the hearing officer to prepare a written decision. An inmate may file an appeal of the finding or the sanctions imposed to the Superintendent who may, in addition to other options, order a rehearing or dismiss the charges. The Commissioner reviews sanctions involving "a recommended good time forfeiture." 103 C.M.R. § 430.25(5). The existence of such remedies militates against implying the additional remedy of a private cause of action for damages. *Cf. Ludlow Education Association v. Town of Ludlow*, 31 Mass.App.Ct. 110, 644 N.E.2d 227, 232, *review denied*, 411 Mass. 1102, 579 N.E.2d 1361 (1991) (where statutory framework provides no remedy and confers a right or special legislative concern upon an identifiable interest of a group of which the plaintiff is a member, court may imply private cause of action); *accord Gottlin v. Herzig*, 40 Mass. App.Ct. 163, 662 N.E.2d 706, 709, *review denied*, 422 Mass. 1107, 664 N.E.2d 1197

---

**27.** Defendants generally state that a supervisor can only be liable based on his own acts and omissions and that there is no respondeat superior liability under section 1983.

**28.** Ferreira's memorandum, however, briefly discusses the prerequisites for imposing supervisory liability. This court therefore assumes in the alternative that Ferreira is suing Murphy and DuBois in their supervisory capacities. Even with such an assumption, however, there is an absence of evidence that the conduct of these officials amounted to recklessness or callousness vis-a-vis Ferreira's constitutional rights.

Supervisory liability requires more than mere negligence on the part of the supervisor. "Rather, a supervisor's acts or omissions must amount to a reckless or callous indifference to the constitutional rights of others." *Febus–Rodriguez v. Betancourt–Lebron*, 14 F.3d 87, 92 (1st Cir.1994). Further, there must be an "affirmative link" between the supervisor's acts or failure to act "and the subordinate's violation of the plaintiff's constitutional rights." *Febus–Rodriguez v. Betancourt–Lebron*, 14 F.3d at 92. To the extent Murphy and DuBois' review of Rego's disposition and comportment at the disciplinary hearing constitutes a supervisory relationship, Murphy and DuBois were neither reckless nor callous to the due process rights of Ferreira.

(1996) (court may imply private right of action where statute omits remedy but evinces special legislative concern for identifiable interest of group of which the plaintiff is a member and injury falls within the area of concern).

Although Ferreira is proceeding *pro se,* this court cannot create a cause of action under state law on his behalf. In the event Ferreira wishes to assert another state law claim, using the regulations as support for such a claim, he should seek leave to amend his complaint to bring such a cause of action. Leave to amend is generally freely given absent futility, prejudice or undue hardship. In the event the fourth cause of action is one of federal law under the Due Process Clause, it is duplicative of the first and third causes of action.

As a final issue, defendants submit that Ferreira's request for declaratory relief is either moot or fails for lack of standing. Ferreira requests that interpreters be provided for non-English speaking witnesses at prison disciplinary hearings.[29] He also asks that regulation 430.12(2) be rewritten to provide for such interpreters.

The Declaratory Judgment Act ("the Act"), 28 U.S.C. § 2201, " 'expands the scope of available remedies' " for a plaintiff by allowing him, for example, to seek a declaration that the defendants violated his constitutional rights. *Deveraux v. City of Chicago,* 14 F.3d 328, 330 (7th Cir.1994). Although this court has the discretion under the Act to decline to award the declaratory relief, such discretion cannot be exercised unless there exists a case or controversy under Article III of the Constitution. *See Deveraux v. City of Chicago,* 14 F.3d at 330 (noting that court may not exercise its discretion absent a case or controversy and that the Act tracks the case or controversy requirement of Article III). In other words, "It is fundamental that a court may only issue a declaratory judgment where there is an actual case or controversy within the meaning of Article III." *Interstate Food Processing Corporation v. State of Maine,* 826 F.Supp. 24, 25 (D.Me.1993).

Furthermore, "a plaintiff who has standing to bring a damages claim does not automatically have standing to litigate a claim for injunctive relief arising out of the same set of operative facts." *Tucker v. Phyfer,* 819 F.2d 1030, 1034 (11th Cir.1987). Thus, the plaintiff in *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), could claim damages to remedy the past wrong of being subject to an illegal choke hold by the police but his "assertion that he may again be subject to an illegal chokehold does not create the actual case or controversy that must exist for a declaratory judgment to be entered." *City of Los Angeles v. Lyons,* 461 U.S. at 104, 103 S.Ct. at 1666.

Article III also "requires that a plaintiff's claim be live not just when he first brings suit, but throughout the litigation." *Tucker v. Phyfer,* 819 F.2d at 1034. In contrast, the related concept of standing is measured at the time the lawsuit is filed. *Comer v. Cisneros,* 37 F.3d 775, 787 (2d Cir.1994); *Tucker v. Phyfer,* 819 F.2d at 1033. The doctrine of mootness, which exists when a controversy is no longer live or the parties lack a personal stake in its outcome, *United States Parole Commission v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208–09, 63 L.Ed.2d 479 (1980); *Rocky v. King,* 900 F.2d 864, 867 (5th Cir.1990), generally "requires that the plaintiff's controversy remain live throughout the litigation." *Tucker v. Phyfer,* 819 F.2d at 1033. Thus, if developments occur "during the course of adjudication" which "eliminate a plaintiff's personal stake in the outcome of a suit, then a federal court must dismiss the case as moot." *Rosetti v. Shalala,* 12 F.3d 1216, 1224 (3rd Cir.1994); *accord Tucker v. Phyfer,* 819 F.2d at 1034 n. 3 (mootness usually requires dismissal "because of events occurring after the plaintiff filed suit" such that "any relief the court might grant would be of no utility to the plaintiff"). The time frame of the related concepts of mootness and standing are best described by one commentator as follows:

> The cases articulating the case or controversy requirement conceive of mootness as "the doctrine of standing set in a time

---

**29.** Ferreira essentially requests that this court enjoin defendants to conduct disciplinary hearings in the future with interpreters for non-English speaking witnesses.

frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue through its existence (mootness)."

*Rosetti v. Shalala,* 12 F.3d at 1224 no 19; *see United States Parole Commission v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980) (dicta noting same).

In seeking declaratory relief concerning the prison regulations and the future conduct of prison officials at disciplinary hearings, the case at bar raises the question of whether a case or controversy exists under Article III and, in particular, whether Ferreira's release from OCCC moots his requests for declaratory relief. In order to satisfy the case or controversy requirement, "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interest." *Aetna Life Insurance Company v. Haworth,* 300 U.S. 227, 240–241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937); *Metropolitan Life Insurance Company v. Ditmore,* 729 F.2d 1, 6 (1st Cir.1984) (quoting *Aetna* ). The plaintiff must therefore "demonstrate a 'personal stake in the outcome.' " *City of Los Angeles v. Lyons,* 461 U.S. at 95, 103 S.Ct. at 1665. An abstract injury is not enough. Rather, "The plaintiff must show that he 'has sustained or is sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate.' " *City of Los Angeles v. Lyons,* 461 U.S. at 101–102, 103 S.Ct. at 1665.

■ More specifically, "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *City of Los Angeles v. Lyons,* 461 U.S. at 103, 103 S.Ct. at 1666. Thus, the emotional consequences Ferreira may continue to suffer as a result of the disciplinary hearing are insufficient "absent a real and immediate threat of future injury by the defendant." *City of Los Angeles v. Lyons,* 461 U.S. at 107 n. 8, 103 S.Ct. at 1668 n. 8.

■ The "Art. III mootness doctrine," *United States Parole Commission v. Geraghty,* 445 U.S. at 400–401, 100 S.Ct. at 1210–1211, has the previously mentioned two as-pects: " 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.' " *United States Parole Commission v. Geraghty,* 445 U.S. at 396, 100 S.Ct. at 1208 (citations omitted). Declaratory judgments are thus limited to actual controversies as distinguished from disputes which are hypothetical, abstract or moot. *Perez v. Secretary of Health, Education, and Welfare,* 354 F.Supp. 1342, 1346 (D.P.R.1972). A declaratory judgment is generally moot where "the question presented for decision seeks a judgment upon a matter which, even if the sought judgment were granted, could not have any practical effect upon the parties." *Perez v. Secretary of Health, Education, and Welfare,* 354 F.Supp. at 1346.

At the time Ferreira filed this lawsuit, he was incarcerated at OCCC. Having since been released from OCCC, Ferreira no longer has a sufficiently real and immediate threat of undergoing another disciplinary hearing involving a non-English speaking witness. It has to be assumed that Ferreira "will conduct [his] activities within the law and so avoid prosecution and conviction" and subsequent incarceration. *City of Los Angeles v. Lyons,* 461 U.S. at 103, 103 S.Ct. at 1665 (summarizing *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), which concerned allegations of discriminatory law enforcement and where the prospect of future injury rested on the plaintiffs being arrested again and subjected to proceedings, trial and sentencing). It is also highly unlikely and, in fact, conjectural that, once reincarcerated, Ferreira will be charged with violating prison rules and undergo another disciplinary hearing. It is even less likely that such a hearing will involve a non-English speaking inmate.

In similar instances, courts uniformly find claims for declaratory relief moot and/or lacking in Article III justiciability. *See, e.g., Higgason v. Farley,* 83 F.3d 807, 811 (7th Cir.1996) (prisoner's transfer to another prison mooted his claims for injunctive and declaratory relief in connection with his intra-prison transfer at former institution); *White v. State of Colorado,* 82 F.3d 364, 366 (10th Cir.1996) (affirming summary judgment

against former inmate, now parolee, over Eighth Amendment claim of inadequate medical care and deeming claims for prospective injunctive relief moot in light of inmate's release on parole); *Knox v. McGinnis,* 998 F.2d 1405, 1413–1414 (7th Cir.1993) (affirming summary judgment that inmate lacked standing to enjoin prison officials from future use of restraining device on segregation prisoners because inmate was returned to general prison population; mere possibility that inmate would return to segregation unit in the future "did not establish real and immediate case or controversy"); *Robinson v. City of Chicago,* 868 F.2d 959, 960 & 966 (7th Cir.1989), *cert. denied,* 493 U.S. 1035, 110 S.Ct. 756, 107 L.Ed.2d 773 (1990) (former arrestees lacked Article III standing to seek declaratory relief that city's investigative detention policy was unconstitutional because it was not reasonably likely that they would again encounter the police, give the police probable cause to arrest them and then detain them pending investigation or fingerprint clearance); *Brown v. Fauver,* 819 F.2d 395, 399–400 (3rd Cir.1987) (inmate demanding declaratory relief that prison disciplinary hearing regulation violated his due process rights and seeking injunction barring future application of the regulation lacked Article III standing because there was no immediate threat that he "will ever again be the subject of a prison disciplinary hearing").

Ferreira's release from OCCC thereby mooted his claims seeking to require OCCC officials to provide non-English speaking witnesses at prison disciplinary hearings with interpreters as well as his request for an amendment to regulation 430.12(2). There is no case or controversy within the meaning of Article III over such claims because the threat to Ferreira is neither sufficiently real nor immediate. Furthermore, the matter is not one that is capable of repetition and evading review. "[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *City of Los Angeles v. Lyons,* 461 U.S. at 109, 103 S.Ct. at 1669; *see, e.g., White v. State of Colorado,* 82 F.3d at 366.

## II. PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 25)

As set forth in the procedural section, Ferreira moves for summary judgment on the basis that defendants violated his due process rights by not allowing Johnson to testify in person. He also submits that the administrative record fails to show that Rego even considered the affidavit authored by Johnson. Ferreira further maintains that Rego erred in relying solely on Leary's testimony and written report and that such evidence was insufficient to support a finding that Ferreira violated the disciplinary rule and the subparts at issue. He claims that the required "some evidence" to support Rego's findings is absent and that Rego improperly failed to supply a reason for discrediting one or more of the witnesses' testimony.

In addition, according to Ferreira, Rego improperly failed to ask Castro if he needed an interpreter and then failed to provide Castro with an interpreter. Ferreira contends that regulation 430.12(2) creates a presumption entitling him to an interpreter for a non-English speaking witness such as Castro. Ferreira additionally submits that defendants are not entitled to qualified immunity.

Viewing the record in defendants' favor, Ferreira is not entitled to summary judgment. When viewed in defendants' favor, the record shows that a rational factfinder could find that Ferreira never requested that Johnson testify in person or that Castro be supplied with an interpreter. Contrary to Ferreira's contention, the administrative record meets the some evidence standard. Rego adequately identified the evidence he relied upon and the reasons for his disciplinary actions. Furthermore, defendants are entitled to qualified immunity as a matter of law.

Accordingly, for these and other reasons more fully explained in part I and having separately considered the merits of Ferreira's motion for summary judgment apart from defendants' motion for summary judgment, a denial of the motion is appropriate.

## CONCLUSION

For reasons already explained, defendants' summary judgment motion (Docket Entry # 31) is **ALLOWED** with respect to: (1) the claims of the inadequacy of the written findings in the first and third causes of action; (2) the alleged insufficiency of the evidence to support such findings in the first and third causes of action; (3) the state law claim for the alleged violation of regulation 430.00 in the fourth cause of action; and (4) the declaratory relief that interpreters be provided for non-English speaking witnesses at disciplinary hearings and that regulation 430.12(2) be amended to provide for such interpreters. The motion is **DENIED** with respect to the claim of the failure to allow Johnson to testify in person at the disciplinary hearing and is **DENIED** without prejudice with respect to the interpreter claim. The first and third causes of action therefore survive summary judgment to this extent. The fourth cause of action is dismissed. The second cause of action remains inasmuch as neither party adequately moved for summary judgment on this count. Finally, the motion for summary judgment (Docket Entry # 31) is **ALLOWED** to the extent that defendants are entitled to qualified immunity in their individual capacities.

Ferreira's motion for summary judgment (Docket Entry # 25) is **DENIED**. The parties shall appear for a status conference on October 17, 1996, at 10:00 a.m.